# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____X

FISH KISS, LLC,                          :

     **Plaintiff,**                          :          **Case No. _____**

     **v.**                                   :

**NORTH STAR CREATIONS, LLC,**           :          **COMPLAINT**
**ROOTED MADE, ROOTEDUSA,**
**BERNADETTE GODWIN,**                   :
**ERIC BERNSTEIN, and:**
**JOHN DOE 1-10,**                       :

     **Defendants.**                         :

_____X

Plaintiff Fish Kiss, LLC by and through its undersigned attorneys, Clemente Mueller, P.A., by way of Complaint against Defendants, North Star Creations, LLC, Rooted Made, RootedUSA, Bernadette Godwin, Eric Bernstein, John Doe 1-10 and XYZ Corp. 1-10 avers as follows:

## JURISDICTION AND VENUE

1. This action arises under the Copyright Act of 1976, Title 17 U.S.C., §§ 101 *et seq*., the Lanham Act, Title 15 U.S.C. § 1025 et seq., and New Jersey law.

2. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(a) in that this is the judicial district in which Defendants can be found and have a regular and established place of business in this judicial district.

## **PARTIES**

4. Plaintiff Fish Kiss, LLC ("Fish Kiss" or "Plaintiff") is a Colorado limited liability company with a principal place of business located at 1202 Fletcher Drive, Erie, Colorado 80516.

5. Upon information and belief, Defendant North Star Creations, LLC ("NSC") is a New Jersey limited liability company with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

6. Upon information and belief, Defendant Rooted Made ("Rooted Made") is a subsidiary company of North Star Creations, LLC and is of an unknown entity type with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

7. Upon information and belief, Defendant RootedUSA ("RootedUSA") is a subsidiary company of North Star Creations, LLC and is of an unknown entity type with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

8. Upon information and belief, Defendant Bernadette Godwin ("Godwin") is an individual domiciled in New Jersey and is an officer of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

9. Upon information and belief, Defendant Eric Bernstein ("Bernstein") is an individual domiciled in New Jersey and is an officer of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

10. The defendants sued herein as John Does 1-10 and XYZ Corp. 1-10 are persons and entities unknown to Plaintiff at this time whose acts or omissions are responsible in whole or in part for the harm suffered by Plaintiff as alleged herein.  Plaintiff will amend this Complaint to add the true names and capacities of the fictitiously-named defendants when the same has been ascertained.

## **FACTUAL BACKGROUND**

11. Plaintiff Fish Kiss is a small lifestyle brand company that specializes in the creation of unique designs and artwork.  Fish Kiss has created a unique set of fifty-one artwork designs that consist of maps which capture the essence of 49 of the states and two cities, including the significant landmarks and towns in each ("Fish Kiss Artwork").

12. Fish Kiss offers assorted products featuring its state map artwork, including baby products and clothing, stationery, tabletop items, and textile products.

13.  Upon information and belief, Defendant North Star Creations is a manufacturer of textile products with a China factory located in Hung Hom, Hong Kong.

14. Upon information and belief, Defendant NSC is the parent company of Rooted Made and RootedUSA.

15.  On March 26, 2015, Fish Kiss was solicited via Etsy by Bernadette Godwin, on behalf of NSC, whereby NSC offered textile printing services for the Fish Kiss Artwork.  Fish Kiss agreed to engage NSC to print textiles and worked with NSC over the course of several months to calibrate the textile renderings of the Fish Kiss Artwork.

16.  On August 4, 2015, Anne Klein, President and Founder of Fish Kiss met with Bernadette Godwin and Eric Bernstein of NSC.  During the meeting, Godwin and Bernstein inquired as to Fish Kiss' interest in entering into a licensing arrangement with NSC, whereby NSC would manufacture product bearing the Fish Kiss Artwork via a license of the Fish Kiss Artwork.

17. Anne Klein, on behalf of Fish Kiss, agreed to the licensing arrangement and over the next few months, the parties discussed the specifics of the arrangement and NSC prepared a license agreement for license of the Fish Kiss Artwork.

18.  NSC and Fish Kiss executed a license agreement drafted by NSC for the Fish Kiss Artwork ("License Agreement"), with an effective date of January 1, 2016.  A copy of the License Agreement is attached as **Exhibit A**.

19. Under the License Agreement, NSC was granted the exclusive right to create the Licensed Products, except for the application of the Fish Kiss Artwork on decorative pillows, which right was not exclusive.

20. The parties to the License Agreement were NSC, its parent companies, affiliates and subsidiaries on the one hand, and Fish Kiss, LLC on the other.  Accordingly, the License Agreement was between NSC, RootedUSA and Rooted Made ("the NSC Defendants") and Fish Kiss, LLC.

21.  Under the License Agreement, the NSC Defendants were granted a one year license to manufacture Christmas stockings, Christmas tree skirts, adult kitchen aprons, cotton tea/dish towels and decorative pillows bearing the Fish Kiss Artwork ("Licensed Products"), from January 1, 2016 to January 1, 2017 with no residual sell-off period after termination.

22. Under the License Agreement, Fish Kiss had the right to review and approve new iterations of the Licensed Products for sample approval before they permitted to be offered for sale.

23. Under the License Agreement, the final production of the Licensed Products were to consistently bear Fish Kiss branding, labeling and packaging.

24. Under the Schedule of Artwork annexed to the License Agreement ("Schedule of Artwork"), the NSC Defendants agreed to pay Fish Kiss royalties as follows: Christmas stockings: 15% of wholesale cost; Christmas tree skirts: 15% of wholesale cost; Adult kitchen aprons: 15% of wholesale cost; Cotton tea/dish towels: 15% of wholesale cost; Decorative pillows: 20% of wholesale cost.

4

25. Under the Schedule of Artwork, royalty payments were required to be issued within thirty (30) days of the shipment of Licensed Products to NSC's customers.

26. The License Agreement states that, "[i]n the event of any litigation arising out of or relating to this Agreement, the prevailing party shall be entitled to recover its attorneys' fees incurred in the litigation."

27. Fish Kiss received total payments in the amount of $2,143.65 as royalties for the sale of the Licensed Products.  See **Exhibit B** for the Royalty Statements provided by the NSC Defendants to Fish Kiss for the time period of January 1, 2016 to December 31, 2016.

28. The NSC Defendants represented in the Royalty Statements that it had total sales in the amount of $13,895 from Licensed Products from January 1, 2016 to December 31, 2016.

29. Notwithstanding the NSC Defendants' representations, in January 2017, Anne Klein received an email, attached as **Exhibit C**, from Dan Kennedy, an NSC sales representative, in which he stated that he alone had sold approximately $18,000 to $25,000 of product for the NSC Defendants, with the Licensed Products representing approximately 60% of his sales, or roughly at least $11,000 of Licensed Product.

30. In September 2016 the NSC Defendants sent Fish Kiss a proposal for renewal of the License Agreement (attached as **Exhibit D**).

31. In this proposal, the NSC Defendants represented to Fish Kiss that the total combined sales of tea towels, aprons, Christmas stockings and Christmas tree skirts amounted to $5,408.00. This represented their annual sales of these Licensed Products through August 31, 2016.

32. Notwithstanding the above representation, the NSC Defendants had conflictingly informed Fish Kiss in May 2016 that they had run out of the 1,000 tea towel packaging wrappers and needed to order another 1,000 wrappers.  Since the NSC Defendants were selling the tea

towels for approximately $5.25-$5.50 each, the sale of 1,000 tea towels would equal $5,250 to $5,550 in sales by May 2016.

33.  Upon information and belief, the NSC Defendants have willfully misrepresented the amount of sales of Licensed Products to avoid paying Fish Kiss appropriate royalties due.

34.  Pursuant to the License Agreement, the NSC Defendants owed royalties to Fish Kiss, payable within thirty (30) days of shipment of Licensed Product to the NSC Defendants' customers.

35.  Despite the NSC Defendants' contractual obligations to make royalty payments within thirty (30) days, the NSC Defendants did not pay Fish Kiss royalties from sales of Licensed Product made in November until January 28, 2017.

36.  Pursuant to the terms of the License Agreement, the license terminated one year from the effective date thereof, or January 1, 2017, with no sell-off period.  Accordingly, the NSC Defendants had a contractual obligation to cease manufacture, production and distribution of Licensed Products by no later than January 1, 2017.

37.  Fish Kiss discovered that one of the NSC Defendants' customers, Quaile Connect, LLC, had taken orders for Licensed Product at the Philadelphia Gift Show, held on January 6, 2017.

38.  Fish Kiss also discovered, on or about April 17, 2017, that one of the NSC Defendants' customers posted a Christmas Tree Skirt with Fish Kiss Artwork for sale on eBay.  The posting included an unauthorized high resolution image of Fish Kiss' artwork of its map of California.  An image of this eBay listing is attached as **Exhibit E**.

39.  Upon information and belief, the NSC Defendants were distributing Licensed Products to its customers, exploiting, and allowing the exploitation, of the Fish Kiss Artwork after the rights granted under the License Agreement had terminated.

40. Pursuant to the License Agreement, the NSC Defendants were required to obtain Fish Kiss' approval for any new iterations of Licensed Products. Despite this contractual obligation, Fish Kiss discovered products being sold via Ebay.com and Amazon.com which had not been approved by Fish Kiss, including without limitation, decorative pillows which were of unapproved sizing and contained unapproved piping.  Exemplars of unapproved Licensed Products are attached as **Exhibit F**.

41. Upon information and belief, the NSC Defendants designed, manufactured, produced and distributed unapproved Licensed Products.

42.  Under the terms of the License Agreement, all Licensed Products were to bear Fish Kiss branding, labeling and packaging.

43. Upon information and belief, the NSC Defendants sold Licensed Products that did not include Fish Kiss branding, labeling and packaging in violation of the License Agreement. Exemplars of nonconforming Licensed Products and packaging are attached as **Exhibit G**.

44. Under the terms of the License Agreement, the NSC Defendants did not have any right to modify the Fish Kiss Artwork without the written consent of Fish Kiss.  Nonetheless, Fish Kiss discovered that the NSC Defendants had modified the Fish Kiss Artwork without informing Fish Kiss of such modifications or written consent from Fish Kiss.  An exemplar of the unauthorized, modified work is attached as **Exhibit H**.

**<u>Plaintiff's Assertion of Copyright Infringement against Defendants</u>**

45.  Fish Kiss is the owner of a valid and enforceable U.S. copyright registration for Fish Kiss' Kentucky map artwork design ("Fish Kiss Kentucky Artwork"), namely, U.S. Copyright Registration No. VA 2-049-471.  A copy of Fish Kiss' U.S. Copyright Registration, along with the corresponding deposit material, is attached as **Exhibit I**.

46. Upon information and belief, the NSC Defendants, Godwin and Bernstein modified, manufactured, promoted, distributed and sold derivative works from the Fish Kiss Artwork, as set forth in Exhibit G in violation of U.S. Copyright Laws.

47.  Upon information and belief, Godwin and Bernstein directed the modification, creation, manufacture, promotion, distribution and sales of the derivative works from the Fish Kiss Artwork.

48. Upon information and belief, the NSC Defendants, Godwin and Bernstein were aware that the copyrights in and to the Fish Kiss Artwork were owned by Fish Kiss, and were aware that Fish Kiss had the exclusive right to create derivative works from the Fish Kiss Artwork.

49. Upon information and belief, the NSC Defendants, Godwin and Bernstein willfully and knowingly violated Fish Kiss' exclusive rights in and to the Fish Kiss Kentucky Artwork in violation of U.S. Copyright Law.

50. Fish Kiss is the owner of forty-eight valid and enforceable U.S. copyright registrations for the Fish Kiss Artwork designs.

51. Under the terms of the License Agreement, the NSC Defendants' rights to manufacture, import, promote, publicly display and sell the Licensed Products bearing the Fish Kiss Artwork terminated on January 1, 2017.

52. Upon information and belief, the NSC Defendants continued to import, distribute, promote, publicly display, and sell the Licensed Products after January 1, 2017.

53. Plaintiff is unaware at this time, of which of the Fish Kiss Artwork designs were sold after the termination of the rights granted under the License Agreement.

54. On February 9, 2017, then-counsel for Fish Kiss sent a letter to Defendants alleging that the NSC Defendants, Godwin and Bernstein had breached the License Agreement and had violated Fish Kiss' copyrights, as set forth above.  This correspondence demanded that the NSC Defendants, Godwin and Bernstein cease the manufacture, sale and distribution of the Fish Kiss Artwork and derivatives thereof and that the NSC Defendants recalculate their sales of the Licensed Products and remit proper payment of royalties.

55. On March 2, 2017, Robert A. Gleaner, counsel for the NSC Defendants, Godwin and Bernstein, responded by denying Fish Kiss' allegations.

56. On August 10, 2017, counsel for Fish Kiss sent a letter to counsel for Defendants outlining the various breaches of contract and copyright violations, and again demanding that Defendants remedy such violations and provide a proper accounting of sales of Licensed Product.

57. On August 10, 2017, counsel for Defendants denied one of Fish Kiss' allegations and completely ignored the remainder of the allegations set forth in Fish Kiss' August 10, 2017 letter.  Copies of the four letters referenced herein are attached as **Exhibit J**.


**<u>Plaintiff's Assertion of Unfair Competition/Trademark Infringement Claims Against Defendants</u>**

58. The Licensed Products bore the Fish Kiss trademark for at least a portion of the term of the License.

59. The Licensed Products further bore a conspicuous claim that the Licensed Products were "Made in America" and "Made in the USA". Exemplars of the Licensed Products bearing the "Made in America" and "Made in the USA" designations are attached as **Exhibit K**.

60. Upon information and belief, the NSC Defendants manufactured at least a portion of the Licensed Products in China or in a country otherwise outside of the territory of the United States.

61. Upon information and belief, the NSC Defendants willfully and materially misrepresented that the Licensed Products were made in the United States.

62. Upon information and belief, this material representation inured to the detriment of Fish Kiss, since Fish Kiss' brand name was included on at least a portion of the Licensed Products.

63. Upon information and belief, this material misrepresentation has caused damage to Fish Kiss' brand, trademarks and goodwill, and has impaired the goodwill of Fish Kiss.

64. Upon information and belief, this material misrepresentation has caused and will continue to cause difficulties in the future for Fish Kiss in its attempts to sell product under the Fish Kiss brand and trademark, since such China-manufactured products are inferior to those actually produced in the United States, and since consumers will believe that Fish Kiss made the material misrepresentation.

## <u>COUNT ONE – BREACH OF CONTRACT</u>

(Failure to Pay and Make Timely Royalties Due)

65. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Plaintiff has performed all duties, promises, and obligations required of Plaintiff and all conditions precedent that Plaintiff agreed to perform under the License Agreement.

67. Under the terms of the License Agreement, the NSC Defendants were required to pay royalties to Fish Kiss within thirty (30) days for all sales of Licensed Product upon the shipment of Licensed Product to the NSC Defendants' customers.

68. Upon information and belief, the NSC Defendants have withheld a full and complete accounting of the accurate amount of sales of the Licensed Products.

69. Upon information and belief, the NSC Defendants have withheld this information with willful and deceptive intent to avoid paying the full amount of royalties due to Plaintiff.

70. The NSC Defendants paid royalties to Fish Kiss for Licensed Products shipped in November 2016, on January 28, 2017, almost sixty days late, after such royalties were due and owing.

71. Upon information and belief, the NSC Defendants have failed to pay royalties to Fish Kiss for shipped Licensed Products due and owing to Plaintiff, at various times in 2016, and such failures constitute a breach of the License Agreement.

72. The NSC Defendants have failed and refused, and continue to fail and refuse, to pay royalties to Fish Kiss for all sales of the Licensed Products. Upon information and belief, the NSC Defendants' breach of the terms of the License Agreement has caused Plaintiff harm.

73. As a result of the NSC Defendants' breach of the License Agreement, Plaintiff has suffered general and consequential damages, including monies due and owing for royalties and interest thereon.  Plaintiff is therefore entitled to damages in an amount to be determined at trial.

**COUNT TWO – BREACH OF CONTRACT**
(Failure to Cease Use of Fish Kiss Artwork and Sale of Licensed
Product Upon Termination of the Agreement)

74. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Plaintiff has performed all duties, promises, and obligations required of Plaintiff and all conditions precedent that Plaintiff agreed to perform under the License Agreement.

76. Under the terms of the License Agreement, all rights in and to the Fish Kiss Artwork reverted to Fish Kiss on January 1, 2017, and the NSC Defendants' rights to manufacture, import, promote, publicly display and distribute the Licensed Products and otherwise exploit the Fish Kiss Artwork terminated.

77. Despite this fact, and upon information and belief, the NSC Defendants continued to manufacture, import, promote, publicly display and distribute the Licensed Products and otherwise exploit the Fish Kiss Artwork after the termination of the License Agreement.

78. The NSC Defendants' continued manufacture, importation, promotion, public display and distribution of the Licensed Products, and continued exploitation of the Fish Kiss Artwork after the termination of the License Agreement constitutes a breach of the License Agreement.

79. As a result of the NSC Defendants' breach of the License Agreement, Plaintiff has suffered damages for which there is no adequate legal remedy at law.  Plaintiff is therefore entitled to equitable relief in the form of injunctive relief and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which have been obtained by the NSC Defendants as a result of such actions.

## <u>COUNT THREE – BREACH OF CONTRACT</u>
(Failure to Obtain Approval of Licensed Products Prior to Distribution,
Failure to Include Fish Kiss Branding, Labeling and Packaging,
and Unauthorized Modification of Fish Kiss Artwork)

80. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Plaintiff has performed all duties, promises, and obligations required of Plaintiff and all conditions precedent that Plaintiff agreed to perform under the License Agreement.

82. Under the terms of the License Agreement, the NSC Defendants had a duty and obligation to obtain approval for any new Licensed Products prior to offering said products for distribution, a duty and obligation to include Fish Kiss branding, labeling and packaging on all Licensed Products, and a contractual prohibition against modifying the Fish Kiss Kentucky Artwork without written consent and authorization.

83. Despite this fact, and upon information and belief, the NSC Defendants designed, manufactured, promoted, distributed and sold new Licensed Products without obtaining approval from Fish Kiss.

84. NSC Defendants failed to include Fish Kiss branding, labeling and packaging on at least a portion of the Licensed Products, and instead included only the NSC Defendants' branding, labeling and packaging on the Licensed Products.

85. Despite the contractual prohibition, the NSC Defendants modified the Fish Kiss Kentucky Artwork without notifying Fish Kiss and without obtaining written consent and/or authorization to do so.

86. The NSC Defendants' failure to obtain Fish Kiss' approval for said products, failure to include the Fish Kiss branding, labeling and packaging on the Licensed Products, and the modification of Fish Kiss Kentucky Artwork without Fish Kiss' authorization constitutes a breach of the License Agreement.

87. As a result of the NSC Defendants' breach of the License Agreement, Plaintiff has suffered damages for which there is no adequate legal remedy at law.  Plaintiff is therefore entitled to equitable relief in the form of injunctive relief and full restitution and/or disgorgement

of all revenues, earnings, profits, compensation and benefits which have been obtained by the NSC Defendants as a result of such actions.

## COUNT FOUR – COPYRIGHT INFRINGEMENT

88. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. Plaintiff is the owner of a valid and enforceable U.S. Copyright Registration for the Fish Kiss Kentucky Artwork, and is the creator and owner of the Fish Kiss Kentucky Artwork design.

90. Upon information and belief, the NSC Defendants had access to the Fish Kiss Kentucky Artwork design.

91. Upon information and belief, the NSC Defendants modified the Fish Kiss Kentucky Artwork design and subsequently manufactured, imported, promoted, publicly displayed, distributed and otherwise sold derivatives of the Fish Kiss Kentucky Artwork design ("Infringing Kentucky Design").

92. Upon information and belief the Infringing Kentucky Design is strikingly similar to and/or is a derivative work of the Fish Kiss Kentucky Artwork design.

93. Plaintiff has not authorized the copying of the Fish Kiss Kentucky Artwork design or the distribution of any unauthorized copies by the NSC Defendants in any format or otherwise.

94. The Defendants creation, publication, display and use of the Infringing Kentucky Design has infringed and, if not terminated, continues to infringe upon Plaintiff's rights in the Fish Kiss Kentucky Artwork.

95. The Defendants knew or should have known that Plaintiff's permission was required to make and distribute copies of the Infringing Kentucky Design, and such infringement compromises Plaintiff's Fish Kiss Kentucky Artwork.

96. The Defendants intentionally, wantonly, and/or recklessly disregarded rights it knew or reasonably should have known were claimed in Plaintiff's Fish Kiss Kentucky Artwork, when creating or causing the manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design.

97. Plaintiff, through counsel, has requested of Defendants to cease infringing activities described above and to account for all uses and profits of the Defendants, but Defendants expressly refused to provide an accounting and has expressly refused to cease the manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design.

98. Defendants continued manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design after the notice to cease and desist shows willfulness of their copyright infringement.

99. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. §501.

100. Defendants have profited from the infringing activities described above.

101. Defendants' infringement of Plaintiff's copyrighted Fish Kiss Kentucky Artwork has directly and proximately caused Plaintiff monetary damages including lost sales, in an amount thus far not determined, and subject to proof at trial.

102. Plaintiff has lost profits as a result of Defendants infringement, in an amount thus far not determined and subject to proof at trial.

103.  Plaintiff is entitled to recover actual damages for its licensing fees and royalties for the work under 17 U.S.C. §504(b).

104.  As a result of the NSC Defendants' acts of infringement, Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for their infringement of the Fish Kiss Kentucky Artwork design.  As such, Fish Kiss is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Fish Kiss Kentucky Artwork design in an amount to be established at trial.

## COUNT FIVE – COPYRIGHT INFRINGEMENT

105. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

106.  Plaintiff is the owner of forty-eight (48) valid and enforceable U.S. Copyright Registrations for the Fish Kiss Artwork, and is the creator and owner of the Fish Kiss Artwork.

107.  Upon information and belief, the NSC Defendants had access to the Fish Kiss Artwork.

108.  Upon information and belief, the NSC Defendants manufactured, imported, promoted, publicly displayed, distributed and otherwise sold products bearing the Fish Kiss Artwork after termination of the License Agreement ("Infringing Licensed Products").

109.  Upon information and belief, the acts of the NSC Defendants constitutes copyright infringement, and if not terminated, continues to infringe upon Plaintiff's rights in the copyrighted Fish Kiss Artwork.

110. The Defendants knew or should have known that Plaintiff's permission was required to manufacture, import, promotion, public display and distribution of the Infringing Licensed Products, and such infringement compromises Plaintiff's Fish Kiss Artwork.

111. The Defendants intentionally, wantonly, and/or recklessly disregarded rights it knew or reasonably should have known were claimed in Plaintiff's Fish Kiss Artwork, when creating or causing the manufacture, importation, promotion, public display, and distribution of the Infringing Licensed Products.

112. Plaintiff, through counsel, has requested of Defendants to cease infringing activities described above and to account for all uses and profits of the Defendants, but Defendants expressly refused to provide an accounting and has expressly refused to cease the manufacture, importation, promotion, public display, and distribution of the Infringing Licensed Products.

113. Defendants continued manufacture, importation, promotion, public display and distribution of the Infringing Licensed Products after the notice to cease and desist shows willfulness of their copyright infringement.

114. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. §501.

115. Defendants have profited from the infringing activities described above.

116. Defendants' infringement of Plaintiff's copyrighted Fish Kiss Artwork has directly and proximately caused Plaintiff monetary damages including lost sales, in an amount thus far not determined, and subject to proof at trial.

117. Plaintiff has lost profits as a result of Defendants infringement, in an amount thus far not determined and subject to proof at trial.

118. Plaintiff is entitled to recover actual damages for its licensing fees and royalties for the work under 17 U.S.C. §504(b).

119. As a result of the NSC Defendants' acts of infringement, Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for their infringement of the Infringing Licensed Products.  As such, Fish Kiss is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Fish Kiss Artwork in an amount to be established at trial.

### COUNT SIX – VICARIOUS and/or CONTRIBUTORY COPYRIGHT INFRINGEMENT

120. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121. Upon information and belief, Defendants Godwin and Bernstein are officers, directors and/or owners of the NSC Defendants.

122. Upon information and belief, Defendants Godwin and Bernstein knowingly induced, participated in, aided and abetted and profited from the illegal reproduction and/or subsequent sales of the Infringing Kentucky Design and the Infringing Licensed Products.

123. Upon information and belief, Defendants Godwin and Bernstein are vicariously liable for the infringement alleged herein regarding the Infringing Kentucky Design and the Infringing Licensed Products because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

124. By way of Defendant Godwin and Bernstein's acts of contributory and vicarious infringement as alleged above, Fish Kiss has suffered, and will continue to suffer, substantial damages to its business in an amount to be established at trial.

### COUNT EIGHT – FALSE ADVERTISING (Lanham Act § 43(a))

128. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

129. Upon information and belief, the NSC Defendants have included designations on the Licensed Products that the products were "Made in America" and "Made in the United States".

130. Upon information and belief, the NSC Defendants manufactured at least a portion of the Licensed Products in China or otherwise outside of the territory of the United States of America.

131. Upon information and belief, the "Made in America" and "Made in the United States" designations deceived a substantial portion of intended and actual consumers of the Licensed Products into believing that the Licensed Products were made in the United States.

132. Upon information and belief, the false designation made by the NSC Defendants, namely, that the Licensed Products were "made in America" and "Made in the United States" were material, false and misleading.

133. Upon information and belief, the Licensed Products were sold in United States interstate commerce.

134. Upon information and belief, at least a portion of the Licensed Products bearing the designation "Made in America" and "Made in the United States" included Fish Kiss' trademark and brand name, thus designating Fish Kiss as the source of the Licensed Products. Due to the NSC Defendants' false advertising in connection with the Licensed Products, Fish Kiss has suffered damage to its business and goodwill since the Licensed Products were of inferior quality than those which are actually made in the United States.

135. Due to the NSC Defendants' false advertising in connection with the Licensed Products, Fish Kiss has suffered damage to its business and goodwill, as consumers who discover

that the Licensed Products were actually made in China or other international territories will believe that Fish Kiss made the material and misleading representation.

136. The NSC Defendants actions violate Plaintiff's rights under 15 U.S.C. § 1125(a).

## COUNT NINE – NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. 56-8-2 *et seq.*)

137. Plaintiff repeats, realleges and incorporates herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

138. Upon information and belief, the NSC Defendants' false and misleading statements that the Licensed Products were "Made in America" and "Made in the United States" were made to the general consuming public in connection with the sale and/or advertisement of merchandise.

139. Upon information and belief, the NSC Defendants' false and misleading statements that the Licensed Products were "Made in America" and "Made in the United States" were made with the intent of promoting the purchase and sale of the Licensed Products.

140. Upon information and belief, the NSC Defendants' false and misleading statement was a material misrepresentation made with the intent of deceiving the consuming public.

141. Due to the NSC Defendants' unlawful acts and/or practices associated with the false advertising in connection with the Licensed Products, Fish Kiss has suffered damage to its business and goodwill since the Licensed Products were of inferior quality than those which are actually made in the United States.

142. Due to the NSC Defendants' false advertising in connection with the Licensed Products, Fish Kiss has suffered damage to its business and goodwill, as consumers who discover that the Licensed Products were actually made in China or other international territories will believe that Fish Kiss made the material and misleading representation.

143. The NSC Defendants have been unjustly enriched as a result of their unlawful practices.

## **PRAYER FOR RELIEF**

**WHEREFORE**. Plaintiff demands:

1.    That judgment be entered against the NSC Defendants for three counts of breach of contract, copyright infringement, false advertising and deceptive business practices in violation of the New Jersey Consumer Fraud Act;

2.    That judgment be entered against Bernadette Godwin and Eric Bernstein for vicarious and contributory copyright infringement;

3.    That an injunction be issued enjoining the NSC Defendants, their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them:

        a.  From infringing Plaintiff's copyrights in any manner;

        b.  From making false, fraudulent statements and misrepresentations regarding the origin of their goods; and

        c.  From further manufacture, importation, promotion and/or distribution of the Licensed Products, the Infringing Kentucky Products and the Infringing Licensed Products;

4.    That Defendants be required to provide Plaintiff with a full, complete and accurate accounting of all royalties due and owing to Plaintiff under the License Agreement, to be performed by a third party certified accountant;

5.    That Defendants be required to destroy any and all remaining Infringing Kentucky Products, Infringing Licensed Products and Fish Kiss Artwork in their inventory;

6.      That Defendants be required to recall any Infringing Kentucky Products from their retail customers;

7.      That Plaintiff be awarded all profits of Defendant plus all losses of Plaintiff, plus any other monetary advantage gained by the Defendant through its infringement, the exact sum to be proven at the time of trial and as available under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

8.      That Plaintiff be awarded damages in an amount sufficient to compensate it for its losses and other harm caused by Defendant as a result of Defendants' false advertising as available under the Lanham Act, 15 U.S.C. § 1025 *et seq.*;

9.      That Plaintiff be awarded compensatory and punitive damages to compensate Plaintiff for its losses and other harm caused by Defendant as a result of Defendants' deceptive business practices as available under New Jersey Code § 58-.8-2 *et seq.*;

10.     That Plaintiff be awarded punitive damages in an amount sufficient to punish Defendants for and to deter Defendants from such wrongful conduct;

11.     That Plaintiff be awarded its attorneys fees pursuant to the terms of the License Agreement and as the prevailing party in this action;

12.     That Plaintiff be awarded pre-judgment interest as allowed by law;

13.     That Plaintiff be awarded the costs of this action; and

14.     That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial for all issues triable to a jury pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

CLEMENT MUELLER, P.A.

Dated: October __11__, 2017

By: _____

Jessie Christine Basner, Esq.
(#021952004)
P.O. Box 1296
222 Ridgedale Avenue, Floor 2
Morristown, NJ 07827
Telephone: (973) 455-8008
Facsimile: (973) 455-8118
Email: jbasner@cm-legal.com

*Attorneys for Plaintiff Fish Kiss LLC*