**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FISH KISS, LLC<br><br>Plaintiff,<br>v.<br><br>NORTH STAR CREATIONS, LLC,<br>ROOTED MADE, ROOTED USA,<br>BERNADETTE GODWIN,<br>ERIC BERNSTEIN, and<br>JOHN DOE 1-10<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br>C.A. No. 17-CV-08193<br><br><br>Motion Day: January 3, 2018 |

**DEFENDANTS' NORTH STAR CREATION'S, LLC, ROOTED MADE, ROOTED USA, BERNADETTE GODWIN, AND ERIC BERNSTEIN'S MEMORANDUM IN SUPPORT OF THEIR ONMIBUS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND FOR A MORE DEFINITE STATEMENT**

Defendants North Star Creation, LLC, Rooted Made, Rooted USA (collectively **"NSC")**, Bernadette Godwin, and Eric Bernstein (along with NSC, collectively **"Defendants"**), hereby submit this memorandum of law in support of their motion to dismiss Plaintiff Fish Kiss, Inc.'s (**"Plaintiff"**) claims raised in its Complaint pursuant to Fed. R. Civ. P.12(b)(1) and 12(b)(6), and for a more definite statement pursuant to Fed. R. Civ. P 12(e) as to any claims that may remain, if the Court denies any aspect of Defendants' motion to dismiss.

# I. INTRODUCTION

Defendant North Star Creations, LLC is a small textile products company run by Bernadette Godwin and Eric Bernstein in Medford, NJ. *Complaint* ¶*8-9.* "Rooted Made" and "Rooted USA" are sub-brands NSC uses for products it manufacturers at their Medford, NJ location.[1] *See Id. Exh. G* (NSC product images showing the brands); *Declaration of Bernadette Godwin ("Godwin Decl.),* ¶ 5. NSC has two full-time employees who are seamstresses that work in the Medford, NJ, location, and from time to time hires part-time seamstresses to assist during busy seasons. *Id.*¶ 7. Anne Klein is an Artist who is also allegedly an officer of Plaintiff, Fish Kiss, LLC, and who entered into an "Artist Licensing Agreement" with NSC. *Compl.* ¶*16.* Ms. Godwin, like Ms. Klein, is an artist and designs a variety of products and prints for NSC. *Godwin Decl.* ¶ 2.

Pursuant to the "Artist Licensing Agreement" between Anne Klein and NSC, Anne Klein, <u>not Plaintiff Fish Kiss, LLC</u>, was paid a total of $2,143.65 in royalties on NSC's sales of products bearing artwork licensed by Anne Klein to NSC. *Compl., Exh. A* (Artist Licensing Agreement), and *Exh. B* (NSC 2016 Monthly Royalty Statements). The total amount of sales from which the royalty amounts were calculated was $13,895. *Id.* ¶*28.*

The Complaint largely arises out of allegations of failure to pay royalties under the Agreement. In support of its suspicion that NSC failed to pay the proper royalty amounts, Plaintiff relies on a statement from a former NSC salesman who claims that he alone sold $11,000 worth of product bearing the licensed images (which is *less* than NSC's reported sales of $13,895) (*Id.* at 29), and NSC's order of 1000 tea towel product wrappers in anticipation of future orders, which if used on products bearing the licensed images and sold, would amount to

---

1 NSC uses the brands Rooted Made and Rooted USA. They are not subsidiary companies as Plaintiff alleges in ¶6 and 7. If they were companies, plaintiff would have been able to find the entity type through publicly available information available at the State of NJ, Department of Treasury.

at most an additional $5,550 in sales, or a royalty payment of $832.50 (which is 15% of sales based on Agreement, *Id. Ex. A)*

As such, even if Plaintiff's allegations were true – which they are not – the total sales upon which royalties would be due would be $2,655, which is $11,000+$5,550, minus the $13,895 in sales NSC already accounted for in the royalty payments. The royalty amount due on that amount, even assuming the highest rate in the Agreement, would be **$531**. Even if NSC sold twice or three times as much as it reported – which it clearly and unequivocally did not as the evidence will show in discovery if need be – the royalty amount due would be less than $5,000.

Plaintiff's 143 paragraph Complaint is fueled by complete and utter speculation, apparent frustration and outright anger, and is not grounded in any set of facts that could possibly justify the exorbitant amount of time and energy spent and to be spent by all parties and this Court.

## II. SUMMARY OF MOTION

Plaintiff filed its Complaint on October 12, 2017, alleging three counts of breach of contract, three counts of copyright infringement (one of which seeks to hold Bernadette Godwin and Eric Bernstein personally liable), one count arising under the Lanham Act (false advertising), and one count arising under the New Jersey Consumer Fraud Act.[2] The claims for which Defendants now seek dismissal all rely on a common theme set forth by Plaintiff: the alleged copying and use of Plaintiff's copyrighted artwork, without permission, or without payment of the proper royalty amount under the Artist Licensing Agreement.

Counts One through Three should be dismissed because Plaintiff is not a party to the Artist Licensing Agreement and therefore, lacks standing to assert those claims.

2 The complaint does not have a "Count 7".

Counts Four through Six should be dismissed pursuant to the "first sale doctrine", which precludes copyright infringement claims by the owner of a particular copy lawfully made to sell or otherwise dispose of the possession of the copy. Count Five should also be dismissed on the grounds that Plaintiff has failed to identify the deposit materials for the forty-eight U.S. Copyright registrations it alleges NSC has infringed that give rise to the claim. *Id. at ¶ 106 et.seq*. Counts Two and Five should be dismissed further on the grounds that plaintiff admits in paragraph 53 of the Complaint that, "Plaintiff is unaware at this time, of which of the Fish Kiss Artwork designs were sold after the termination of the rights granted under the License Agreement." Plaintiff therefore has not, and admittedly cannot, plead what acts defendant allegedly committed that give rise to these claims.

Count Three and Four should be dismissed further because the complaint fails to identify which alleged unapproved modification was made to Plaintiff's alleged copyrighted "Fish Kiss Kentucky Artwork" design. *Complaint ¶85, and ¶91 et seq.*, and Count Six should be dismissed further for failure to identify which aspect of the alleged "Infringing Kentucky Design" gives rise to the underlying copyright infringement allegation. Without such information, Defendant cannot ascertain the basis for such claims sufficient to respond to the Complaint.

Count Six alleges vicarious copyright infringement liability against individual defendants Godwin and Bernstein based on "sales of the Infringing Kentucky Design and the Infringing Licensed Products." *Compl. ¶123.* Count Six should be dismissed further because plaintiff has failed to state a claim for vicarious copyright infringement liability, which requires pleading facts that identify another party who was responsible for the direct infringement to which these individual defendants contributed in some way.

Count Eight should be dismissed because Plaintiff has alleged no facts to maintain a count for false advertising under the Lanham Act. The gravamen of Plaintiff's claim is that NSC products bearing the licensed images were made in China and that it suffered damage because "the Licensed Products were of inferior quality than those which are actually made in the United States" *Comp. ¶ 134.* However, there is absolutely no factual basis pled for either of these completely meritless, unsupported conclusions and unwarranted inferences, other than pure unsubstantiated speculation and conjecture. Plaintiff therefore has not pled facts sufficient for plaintiff to state a claim upon which relief can be granted, and defendants' move for summary judgement on those claims as well based on the evidence attached hereto.

Count Nine alleges a violation of the New Jersey Consumer Fraud Act (**"NJCFA"**). This Count should be dismissed because Plaintiff lacks standing to assert this claim, for the numerous reasons set forth in more detail herein.

## III. STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must accept as true all of the well-pleaded allegations in the Complaint, and all reasonable inferences that can be drawn from them, and view them in the light most favorable to Plaintiff. *McTernan v. City of York, PA,* 557 F.3d 521, 526 (3d Cir. 2009). However, this Court need not accept Plaintiff's bald assertions, "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). Similarly, this Court cannot simply assume Plaintiff will prove facts it has not alleged. *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Under the Rule 8 pleading requirements for factual allegations that the Supreme Court clarified in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009) thereafter, Plaintiff must allege enough facts to support its claims to show that they are "plausible on [their] face" and not merely "conceivable." *Twombly*, 550 U.S. at 570. Plaintiff must allege "grounds" of its "entitlement to relief" that are "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of the truth.") (internal quotations omitted)). Neither will "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," nor "[n]aked assertions devoid of further factual enhancement" suffice to meet the threshold standard. *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see also Teri Woods Pub., L.L.C. v. Williams*, Civ. A. No. 12-04854, 2013 WL 5777151, slip op. at *2 (E.D. Pa. Oct. 25, 2013) (Kelly, J.) (*quoting Twombly*, 550 U.S. at 555).

To pass muster, allegations must rise to more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted). Claims such as these are subject to dismissal pursuant to Rule 12(b)(6).

Finally, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quoting 5 Wright and Miller § 1216, at 233-34) (internal quotations omitted).

## IV. ARGUMENT

### A. Only a Real Party in Interest Has Standing to Sue

Fed. R. Civ. P. 17(a) requires that every action shall be prosecuted in the name of the real party in interest. The failure to establish standing renders the court without the power to decide the merits of the underlying matter. *U.S. v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992); *citing FW/PBS v. City of Dallas*, 493 U.S. 215, 231 (1990); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 475-76 (1982). Mere interest in an event, or mere status as an ultimate beneficiary of the litigation, does not render a party a real party in interest within the meaning of Rule 17(a). *Armour Pharmaceutical Co. v. Home Ins. Co.*, 60 F.R.D. 592, 594 (N.D. Ill. 1973). A plaintiff must assert its own legal rights and cannot rest its claim to relief on the legal rights of another. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

### B. Plaintiff Lacks Standing to Assert Claims of Breach of the Artist Licensing Agreement (Counts One-Three)

It cannot be denied from the Complaint that Plaintiff Fish Kiss, LLC is not a party to the "Artist Licensing Agreement," attached as Exhibit A thereto. In counts One through Three of its Complaint, however, Fish Kiss, LLC alleges that the "NSC Defendants" – an undefined term in the Complaint -- breached the Artist Licensing Agreement which, on its face, is a contract between Anne Klein and Defendant North Star Creations, LLC.

Before proceeding to review the merits of a case, the Court has a duty to assure itself that Plaintiff has Article III standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is gauged by the specific common law, statutory or constitutional claims that a party presents. *International Primate Protection League v.*

*Administrators of Tulane Educational Fund*. 500 U.S. 72 (1991). The standing inquiry focuses on whether the plaintiff is the proper party to bring the suit. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 37, 48 (1976). The question often turns on the nature and source of the claim asserted. *Warth v. Seldin*, 422 U.S. 490, 500 (1975).

The Supreme Court teaches: "Typically … the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984). "A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007) (alteration in original).

A defendant may challenge the court's subject-matter jurisdiction with either a facial or factual attack. *Gould Elecs. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000), *modified by Simon v. United States,* 341 F.3d 193 (3d Cir. 2003). In a facial attack, the defendant contests the sufficiency of the well-pleaded allegations insofar as they provide a basis for the court's exercise of subject-matter jurisdiction. *NE Hub Partners, L.P. v. CNG Transmission Corp.,* 239 F.3d 333, 341 (3d Cir. 2001). A facial attack takes the facts in the pleadings as true, construed in the light most favorable to the plaintiff, and determines therefrom whether jurisdiction exists. *Gould Elecs.,* 220 F.3d at 176; *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977); *see Lujan,* 504 U.S. at 561.

In a factual attack, on the other hand, the defendant challenges the factual basis underlying the court's subject-matter jurisdiction with extrinsic evidence, essentially making the argument that the allegations supportive of jurisdiction are not true. *Cunningham v. Lenape Reg'l High Dist. Bd. of Educ.,* 492 F.Supp.2d 439, 447 (D.N.J. 2007). In a factual attack, "no

presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen,* 549 F.2d at 891.

The Artist Licensing Agreement clearly shows that the parties to the agreement are Anne Klein and North Star, LLC. It states:

***ARTIST LICENSING AGREEMENT***

*This Artist Licensing Agreement (the "AGREEMENT") is entered into effective this date, Jan 1, 2016 between Anne Klein of Fish Kiss, LLC ("ARTIST") and North Star Creations, LLC ("CLIENT"). All*

*Comp.* Exh. A.

From this initial recitation, it is evident that the Agreement is <u>not</u> between Fish Kiss LLC and North Star Creations, LLC. If it were, it would not have included the name "Anne Klein". The "of Fish Kiss LLC" portion of the recitation does not make Fish Kiss, LLC a party to this contract any more than it would make the United States a party if it read "between Anne Klein of the United States ("ARTIST") and North Star Creations, LLC ("CLIENT"). Further establishing that Anne Klein is the proper party and beneficiary of this Agreement, the "***Fees:"*** paragraph of the agreement states "Client agrees to pay all agreed upon fees to Artist. . .." And indeed, each and every royalty payment made by NSC pursuant to this Agreement <u>was payable to Anne Klein, individually, and was cashed by her, not Fish Kiss, LLC.</u> *Godwin Declaration,* ¶4, Exh. A (Images of NSC's check register; carbon copy imprints of the royalty checks made payable to Anne Klein.) Plaintiff, therefore lacks standing to bring Counts One through Three against any defendant and those Counts should be dismissed.

### C. Plaintiff's Copyright Infringement Claims in Counts 4, 5 and 6 Fail Under the First Sale Doctrine

The first sale doctrine precludes Plaintiff's copyright infringement claims, as set forth in counts 4 through 6. The first sale doctrine allows the "owner of a particular copy lawfully made ... to sell or otherwise dispose of the possession of the copy" without the authority of the copyright owner. 17 U.S.C. § 109(a). Plaintiff has no basis to believe, and therefor has not and cannot allege, that Defendants unlawfully made products bearing the licensed images after what it contends was a one-year contract ending on January 1, 2017. *Compl.* at ¶36. Plaintiff's allegations related to activity after January 1, 2017 are:

- Quaile Connect, LLC (who is not a party to this litigation) took orders for "Licensed Products" at the Philadelphia Gift Show on January 6, 2017. *Compl.* ¶37.
- One of NSC's customers posted a Christmas Tree Skirt with Fish Kiss Artwork for sale on eBay. *Compl.* ¶38; and
- "Upon information and belief," NSC was distributing "Licensed Products" to its customers after January 1, 2017.

Even if true, the first sale doctrine precludes a copyright infringement claim based on such activity. The first sale doctrine, codified in Section 109(a) of the Copyright Act, 17 U.S.C. § 109(a), states "that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." *Quality King Distribs. v. L'Anza Research Int'l*, 523 U.S. 135, 152 (1998). Thus, a plaintiff has no copyright infringement claim for later distribution of a copyrighted product where the copyright owner consented to the sale of that particular copyrighted product.

Anne Klein, or for purposes of dismissal, Plaintiff, undoubtedly consented to the manufacture of products bearing the licensed Fish Kiss Artwork during the period in which Plaintiff contends NSC had a license. By agreeing to have those products manufactured, Klein placed those goods in the stream of commerce. Even if such products were later sold, such sales fall squarely within the protections of the first sale doctrine. Accordingly plaintiff's copyright claims in Counts 4 and 6 should be dismissed pursuant to the first sale doctrine for failure to state a claim upon which relief may be granted.

**D. Counts 4-6 Fail to State a Claim And Should Be Dismissed or, in the Alternative, along with Count 3 are Vague and Ambiguous and Require More Specific Pleading**

Complaint Counts 4 through 6 (Copyright Infringement) should also be dismissed for failure to state a claim upon which relief can be granted on other grounds. To survive a motion to dismiss, a claim for copyright infringement must allege: (1) which specific original works are the subject of the copyright; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the [Copyright Act]; and (4) by what acts and during what time the defendant infringed the copyright. *Bradshaw v. American Institute for History Educ.*, Civ. No. 12-1367, 2013 U.S. Dist. LEXIS 34566, at *7 (D.N.J. Mar. 13, 2013) (*citing Gee v. CBS. Inc.*, 471 F. Supp. 600, 643 (E.D. Pa. 1979), aff'd, 612 F.2d 572 (3d Cir. 1979)).

Counts 4-6 are based on alleged modifications made by Plaintiff to a "Fish Kiss Kentucky Artwork" design. *Complaint ¶85 and ¶91 et seq.* However, the complaint fails to identify what such modifications were in sufficient detail for defendants to respond to these allegations. As such, Plaintiff has failed to identify "by what acts" defendant infringed the copyright. Furthermore, with respect to Count 5 specifically, Plaintiff alleges copyright infringement of

"forty-eight (48) U.S Copyright registrations for Fish Kiss Artwork," but does not provide any information about those registrations, what the copyrighted material looks like, or what acts of defendant give rise to its claims, and during what time period, those acts allegedly occurred.

For all these reasons, to the extent not otherwise dismissed above, Counts 4 through 6 should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ . P. 12(b)(6). Alternatively, each of these Counts, in addition to Count 3 contain vague and ambiguous allegations and require more specific pleading to enable plaintiff to adequately respond to such allegations, pursuant to Fed. R. Civ . P. 12(e).

**E. Count 6 - Against The Individual Defendants - Should be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted**

Count Six alleges vicarious copyright infringement liability against individual defendants Godwin and Bernstein based on "sales of the Infringing Kentucky Design and the "Infringing Licensed Products." *Compl.* ¶123. However, plaintiff has failed to state a claim for vicarious copyright infringement liability.

To allege a claim of contributory copyright infringement, a plaintiff must allege: (1) direct copyright infringement of a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) material contribution to the infringement. *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007), *citing Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir.1984) (*quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, Inc., 443 F.2d 1159, 1162 (2d Cir.1971). To state a claim of vicarious copyright infringement, a plaintiff must allege (1) direct copyright infringement by a third party; (2) an obvious and direct financial interest in the exploitation of copyrighted materials; and (3) the right and ability to supervise the infringing activity." *Live Face on Web, LLC v. Howard Stern Prods., Inc.*, 2009 WL 723481, at *3 (E.D.Pa. Mar. 17, 2009). Stated otherwise, "in order to state a cause of action

for contributory and vicarious infringement, a plaintiff must identify another party who was responsible for the direct infringement (to which the defendant contributed in some way)." *Gordon v. Pearson Educ., Inc.*, 85 F.Supp.3d 813, 820 (E.D.Pa. 2015) (*quoting Leonard v. Stemtech Health Scis., Inc.*, Civ. A. No. 08–67, 2013 WL 5288266, 2013 U.S. Dist. LEXIS 134623 (D. Del. Sept. 19, 2013). Plaintiff fails to do so.

Plaintiff argues that Godwin and Bernstein are liable for unspecified reproduction and/or sale of products bearing the licensed images under theories of vicarious and contributory copyright infringement. However, plaintiff admits that it is unaware which of the Fish Kiss Artwork were sold "after the termination of the rights granted under the License Agreement." *Compl.* ¶ 53. Plaintiff therefore has not (and apparently cannot) plead any underlying facts supporting infringement by a third party. Accordingly, Count 6 fails to state a claim upon which relief may be granted. *See Arista Records, Inc. v. Mp3Board, Inc.*, No. 00-cv-4660, 2002 WL 1997918, at *3 (S.D.N.Y. Aug. 29, 2002) ("In order to establish liability for contributory or vicarious copyright infringement, a plaintiff must first prove that direct infringement of its works occurred.").

### F. Count 8 Should be Dismissed for Failure to State a Claim upon Which Relief Can Be Granted and Dismissed on Summary Judgement under Rule 56

Plaintiff has alleged no facts to maintain a count for false advertising under the Lanham Act. The only allegation plaintiff makes regarding NSC's activity outside of the U.S. is that "[u]pon information and belief, the NSC defendants manufactured at least a portion of the Licensed Products in China" or otherwise outside the United States. Complaint ¶ 60, 130. Indeed, all of the allegations in Count 8 are made "upon information and belief" – and for good reason – because they are absolutely, knowingly false. Plaintiff, therefore, has not alleged enough facts to

support its claims to show that they are plausible on their face, not merely just conceivable, as required by *Twombly.*

The standard of review for a motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (internal quotation marks omitted). The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal* 556 U.S. at 662. Plaintiff's bald, and frankly, knowingly untruthful allegations that products bearing the licensed Images were manufactured outside of the United States, is nothing more than a "naked assertion devoid of further factual enhancement" anywhere else in the complaint, and therefore fails to meet the threshold notice pleading standard. *See Id.* at 678.

Count 8 also fails because it alleges mere speculation that "consumers will discover that the products were made in China or other international territories," and that harm may result in that speculative eventuality. *Comp.* ¶ 135. In order for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all allegations in the complaint are true (even if doubtful in fact). . . ." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted). Count 8 therefore also fails to state a claim because plaintiff's speculative allegations about the harm it may suffer if consumers discover that the products were made outside the U.S. – which they are not -- does not meet the pleading standard of *Twombly.* Plaintiff therefore has not pled facts sufficient for plaintiff to state a claim upon which relief can be granted on Count 8.

* * * *

If the court considers matters outside the pleadings before it in a 12(b)(6) motion, the 12(b)(6) motion procedure will automatically be converted into a Rule 56 summary judgment procedure. *Mortensen*, 549 F.2d at 891 (3d. Cir. 1977). Defendant respectfully requests that the court do so in connection with Count 8, due to the wholly and knowingly false inflammatory allegation that products bearing the licensed Images were manufactured outside of the United States, and that those products are of "inferior quality". *Compl.* ¶64.

Bernadette Godwin and Eric Bernstein own NSC. *Godwin Decl.* ¶ 1. During the period of January 1, 2016, through May 2017, there were 4 full-time people working for NSC: Bernadette Godwin, Eric Bernstein, Isabel Johnson, and Lee Cooper, and a few part-time seamstresses hired from time to time during busy periods. *Id.* ¶ 7. Isabel Johnson has been employed by NSC since 2013 as its Lead Seamstress and is responsible for overseeing all sewing production for NSC, including all products manufactured bearing the licensed Fish Kiss Artwork ("Fish Kiss Items"). *Declaration of Isabel Johnson ("Johnson Decl.")*; *Godwin Decl.* ¶ 2. Lee Cooper was employed by NSC from November 2015 through May 2017, and his primary responsibility was to operate the digital textile printers in NSC's NJ office. *Declaration of Lee Cooper ("Cooper Decl.")* ¶ 1.

Mr. Cooper printed the Fish Kiss Artwork on each and every product sold by NSC and did so in the Medford, NJ office. *Cooper Decl.*¶ 2. Once the artwork was printed on the textile, it was passed to Ms. Johnson or a member of her team for any sewing or further assembly of the products required prior to packaging and sale. *Id.* ¶ 4. All of the Fish Kiss Items were sown individually by Ms. Johnson or a member of her team, and all of the products included a sown-in "Fish Kiss" label. *Johnson Decl.* at ¶ 2. All products that NSC manufactured and printed the Fish Kiss Artwork on were manufactured and printed in NSC's Medford NJ office using NSC's

digital textile printer machines. *Cooper Decl.* ¶ 3,5; *Godwin Decl.* ¶ 8. All of the materials purchased for use in assembling products bearing the Fish Kiss Artwork were sourced in the United States. *Godwin Decl.* ¶ 8. Anne Klein personally visited the NSC manufacturing facility in Medford New Jersey in September 2016, and personally observed the Digital Textile Printers printing the licensed Images on the products, and NSC's sewing assembly operation. *Id.* at ¶9; *Cooper Decl.* ¶6; *Johnson Decl.* ¶ 3. Attached as Exhibit B to the *Godwin Decl.* are images of NSC's digital textile printers, sewing operation and warehouse where all of the products bearing Fish Kiss Artwork were printed and assembled.

Plaintiff cannot plead nor prove any set of facts such that a reasonable jury could find in favor of Plaintiff on Count 8. Accordingly, summary judgement is appropriate.

### G. **<u>Plaintiff's NJCFA Count 9 Should be Dismissed for Lack of Standing</u>**

In Count 9, Plaintiff purports to state a claim under the New Jersey Consumer Fraud Act ("NJCFA"). This count should be dismissed for lack of standing under well-settled New Jersey law.

The NJCFA was enacted to protect consumers from improper selling practices by "prevent[ing] deception, fraud, falsity, whether by acts of commission or omission, in connection with the sale and advertisement of merchandise and real estate." *See Fenwick v. Kay American Jeep, Inc.*, 371 A.2d 13, 15 (1977). The NJCFA provides the right to initiate a private cause of action to "[a]ny person who suffers any ascertainable loss of moneys ... as a result" of a violation of the NJCFA. N.J.S.A § 56:8-19. "A corporation may qualify as a person under the [NJCFA] when it finds itself in a consumer oriented situation." *Trans USA Prods, v. Howard Berger Co.*, No. 07-5924, 2008 U.S. Dist. LEXIS 61069, at *18 (D.N.J. Aug. 4, 2008).

Plaintiff lacks standing to assert an NJCFA claim because it is not a "consumer" within the meaning of the Act. While a business may be a consumer, "the business entity must be 'one who uses...goods, and so diminishes or destroys their utilities.'" *City Check Cashing v. National State Bank*, 244 N.J. Super. 304, 309 (App. Div. 1990) (*quoting Hundred East Credit Corp. v. Schuster*, 212 N.J. Super. 350, 355 (App. Div.)), *cert. denied*, 107 N.J. 60 (1986).

In *Arc Networks, Inc. v. Gold Phone Card Co., Inc.,* 333 N.J. Super. 587, 591-92 (Law Div. 2000), the counterclaimant, a distributor of pre-paid calling cards, sought to bring a NJCFA claim against a provider of bulk telephone switching services with which it was doing business. *Id.* at 588-89. The *Arc Networks* court analogized the scenario to the facts of *City Check Cashing, supra,* where a check cashing service alleged a violation of the NJCFA, claiming that when it borrowed funds from a bank it was in effect buying cash for resale to its check cashing customers. *City Check Cashing*, *supra*, 244 N.J. Super at 304. The *City Check Cashing* court reasoned that the check cashing service did not diminish or destroy the value of the cash and, as a result, the plaintiff was not a "consumer" for purposes of the NJCFA. *Id.* at 309. Dismissing the NJCFA claim, the *Arc Networks* court found that the counterclaimant was not a consumer under the NJCFA, as it did not directly consume the telephone services it purchased from the counterclaim-defendant. *Id.* at 590-92. The court held that the counterclaimant's "business purpose in purchasing [counterclaim-defendant's] services was to make them available to users of its phone cards. In so doing, it did not diminish, destroy or consume [the] services." *Id.* According to the *Arc Networks* court, Gold Phone similarly did not diminish the value of the phone services and, as a result, did not benefit from protection under the NJCFA.

Here, Plaintiff's attempt to bring its factual allegations within the purview of the NJCFA is even more tenuous than in *Arc Networks.* Indeed, Plaintiff has failed to allege (nor could it) that it ever used or consumed the goods at issue from Defendants: namely, "Christmas stockings, Christmas tree skirts, adult kitchen aprons, cotton tea/dish towels and decorative pillows bearing the Fish Kiss Artwork[.]" *Compl.* ¶21. Plaintiff has not alleged that it purchased these goods from NSC, because it hasn't. Rather, Anne Klein *licensed* her artwork to NSC so that NCS could then sell its products (embossed with Plaintiff's artwork) to the public at large. Thus, with regard to the transaction at issue, Plaintiff cannot be a "consumer" as defined by the NJCFA. Quite oppositely, Plaintiff alleges that Defendants violated the NJCFA by making misrepresentations to other third-party consumers. *Comp.* ¶ 140 and 142. Accordingly, Count Nine should be dismissed for lack of standing.

Plaintiff's NJCFA claim fails further because Plaintiff does not (and cannot) alleged that it suffered as "ascertainable loss" required by the Act. It is well-settled that the Legislature intended the NJCFA "allow[] a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA." *Thiedemann v. Mercedes-Benz USA,* LLC, 183 N.J. 234, 246 (2005). That actual loss requirement is expressly contained within the NJCFA's statutory language, which provides that *"[a]ny person who suffers any ascertainable loss* of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act... may bring an action ... in any court of competent jurisdiction." N.J.S.A. 56:8-19 (emphasis added). Thus, an express statutory prerequisite for maintenance of a private action under the NJCFA is that the plaintiff must plead that he has suffered an "ascertainable loss of moneys or property" as a result of the defendant's commission of an act declared unlawful by the Act. *See* N.J.S.A. 56:8-19; *see*

*also Weinberg v. Sprint Corp,* 173 N.J. 233, 251 (2002). The New Jersey Appellate Division has noted that "[t]his is purely a 'standing' requirement." *Laufer v. United States Life Ins. Co.,* 385 N.J. Super. 172, 186 (App. Div. 2006).

Accordingly, to adequately allege a claim and demonstrate standing under the NJCFA, a private plaintiff must "plead a claim of ascertainable loss that can survive a motion for summary judgment." *Weinberg,* 173 N.J. at 253. Absent such allegations, a private cause of action seeking the remedies available under the NJCFA necessarily fails. *Id.* As the New Jersey Supreme Court explained in *Thiedemann,* to properly plead a claim under the NJCFA, a private plaintiff, such as Fish Kiss, LLC, must "present a *bona fide* claim for an ascertainable loss." *Id.* at 247. That is, the loss claimed by the plaintiff must not be "hypothetical" or "illusory," *id.* at 248, and "must be presented with some certainty demonstrating that it is capable of calculation." *Id.* at 248-49. In short, the plaintiff must demonstrate "a cognizable and calculable claim of loss due to the alleged CFA violation." *Id.* at 249. Plaintiff has failed to do so.

In *Thiedemann*, *supra*, several car owners purchased vehicles that had defective fuel gauges which did not properly read a "full" tank of gasoline. *Thiedemann*, 183 N.J. at 241. While the owners may have been inconvenienced, all repairs were performed by the manufacturer under warranty at no cost to the owners. *Id.* at 242. The New Jersey Supreme Court held that plaintiffs' argument that there was a "future hypothetical diminution in value" of the car was too speculative to satisfy the ascertainable loss requirement. *Id.* at 252.

Here, as in *Thiedemann*, Plaintiff's conclusory assertion that NCS's alleged misrepresentations *"made to the general public*" caused it to "suffer damage to its business and goodwill," falls far short of satisfying the ascertainable loss requirement of the NJCFA. *Compl.* ¶138, 141 (emphasis added). Indeed, Plaintiff's Complaint fails to allege any ascertainable loss

whatsoever. Accordingly, Plaintiff's claim under the NJCFA should be dismissed for lack of standing and failure to plead any cognizable loss.

## V. CONCLUSION

In view of the foregoing, Defendants have moved pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for an Order dismissing Counts One, Two, Three, and Nine for lack of standing, dismissing Counts Four, Five, and Six for, *inter alia*, failure to state a claim under the first sale doctrine, dismissing Count 8 for failure to state a claim and on summary judgment, and dismissing Counts all counts for failure to state a claim upon which relief may be granted. Because several of plaintiff's claims suffer from a lack of clarity, to the extent any aspect of Defendants' motion to dismiss is not granted, Defendants respectfully request pursuant to Rule 12(e) that Plaintiff be ordered to provide a more definitive statement of the facts upon which it claims entitlement.

For these reasons, we urge the Court to enter the Proposed Order filed herewith.

Dated: December 7, 2017

Respectfully submitted,

**LAULETTA BIRNBAUM**
591 Mantua Blvd., Suite 200
Sewell, NJ 08080
T: 856.669.2573
F: 856.232.1601

By: */s/Robert A. McKinley*
Robert A. McKinley
rmckinley@lauletta.com

*Attorneys for the Non-John Doe Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2017, I served Defendants' North Star Creation's, LLC, Rooted Made, Rooted USA, Bernadette Godwin, And Eric Bernstein's Memorandum in Support of its Onmibus Motion To Dismiss Plaintiff's Complaint And For A More Definite Statement upon all registered ECF parties to the action by causing it to be filed on the Court's ECF system.

Executed on December 7, 2017, in Sewell, New Jersey.

*/s/ Robert A. McKinley*
Robert A. McKinley