**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FISH KISS, LLC and ANNE KLEIN,<br><br>Plaintiff,<br><br>v.<br><br>NORTH STAR CREATIONS, LLC, ROOTED MADE, ROOTEDUSA, BERNADETTE GODWIN, and ERIC BERNSTEIN,<br><br>Defendants. | : | Case No. 17-CV-08193 (JBS) (AMD)<br><br>**SECOND AMENDED COMPLAINT** |

Plaintiffs Fish Kiss, LLC and Anne Klein, by and through their undersigned attorneys, Clemente Mueller, P.A., by way of Complaint against Defendants, North Star Creations, LLC, Rooted Made, RootedUSA, Bernadette Godwin, **and** Eric Bernstein, aver as follows:

**JURISDICTION AND VENUE**

1. This action arises under the Copyright Act of 1976, Title 17 U.S.C., §§ 101 *et seq*., **the Lanham Act, 15 U.S.C. § 1011 et seq.,** New Jersey **common** law**, and the New Jersey Unfair Trade Practices Act, § 56: 8-2.**

2. This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

3. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(a) in that this is the judicial district in which Defendants can be found and have a regular and established place of business in this judicial district.

**PARTIES**

4. Plaintiff Fish Kiss, LLC ("Fish Kiss") is a Colorado limited liability company with a principal place of business located at 1202 Fletcher Drive, Erie, Colorado 80516.

5. Plaintiff Anne Klein ("Klein") is an individual domiciled in Colorado and the President of Fish Kiss, LLC with an address of 1202 Fletcher Drive, Erie, Colorado 80516.

6. Upon information and belief, Defendant North Star Creations, LLC ("NSC") is a New Jersey limited liability company with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

7. Upon information and belief, Defendant Rooted Made ("Rooted Made") is a sub-brand of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

8. Upon information and belief, Defendant RootedUSA ("RootedUSA") is a sub-brand of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

9. Upon information and belief, Defendant Bernadette Godwin ("Godwin") is an individual domiciled in New Jersey and is an officer of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

10. Upon information and belief, Defendant Eric Bernstein ("Bernstein") is an individual domiciled in New Jersey and is an officer of North Star Creations, LLC with a principal place of business located at 310 Miller Road, Medford, New Jersey 08055.

## **FACTUAL BACKGROUND**

11. Plaintiff Fish Kiss is a small lifestyle brand company that specializes in the creation of unique designs and artwork. Fish Kiss has created a unique set of fifty-one artwork designs that consist of maps which capture the essence of 49 of the U.S. states and two cities in each, for which each design is copyrighted ("Fish Kiss Artwork").

12. Klein is the President and a member of Fish Kiss, LLC.

13. Fish Kiss offers assorted products featuring its state map artwork, including baby products and clothing, stationery, tabletop items, and textile products.

14. Upon information and belief, Defendant North Star Creations is a manufacturer of textile products with a China factory located in Hung Hom, Hong Kong.

15. Upon information and belief, Rooted Made and RootedUSA are sub-brands of Defendant NSC.

16. On March 26, 2015, Fish Kiss and Klein were solicited via Etsy by Bernadette Godwin, on behalf of NSC, whereby NSC offered textile printing services for the Fish Kiss Artwork. Fish Kiss and Klein agreed to engage NSC to print textiles and worked with NSC over the course of several months to calibrate the textile renderings of the Fish Kiss Artwork.

17. On August 4, 2015, Klein met with Bernadette Godwin and Eric Bernstein of NSC. During the meeting, Godwin and Bernstein inquired as to Fish Kiss' and Klein's interest in entering into a licensing arrangement with NSC, whereby NSC would manufacture product bearing the Fish Kiss Artwork via a license of the Fish Kiss Artwork.

18. Klein, on behalf of Fish Kiss, agreed to the licensing arrangement and over the next few months, the parties discussed the specifics of the arrangement and NSC prepared a license agreement for license of the Fish Kiss Artwork.

19. NSC and Klein executed a license agreement drafted by NSC for the Fish Kiss Artwork ("License Agreement"), with an effective date of January 1, 2016. A copy of the License Agreement is attached as **Exhibit A**.

20. Pursuant to the License Agreement, Klein forwarded the Fish Kiss Artwork to Defendants via a Dropbox link via such link Defendants downloaded and accessed the file containing the Fish Kiss Artwork.

21. Under the License Agreement, NSC was granted the exclusive right to create the Licensed Products, except for the application of the Fish Kiss Artwork on decorative pillows, which right was not exclusive.

22. The parties to the License Agreement were NSC, its parent companies, affiliates and subsidiaries on the one hand, and Klein, on behalf of Fish Kiss, LLC on the other. Accordingly, the License Agreement was between NSC, RootedUSA and Rooted Made ("the NSC Defendants") and Klein, on behalf of Fish Kiss, LLC.

23. Under the License Agreement, the NSC Defendants were granted a one year license to manufacture Christmas stockings, Christmas tree skirts, adult kitchen aprons, cotton tea/dish towels and decorative pillows bearing the Fish Kiss Artwork ("Licensed Products"), from January 1, 2016 to January 1, 2017 with no residual sell-off period after termination.

**24.** Under the License Agreement, Klein had the right to review and approve new iterations of the Licensed Products for sample approval before they were permitted to be offered for sale. *See Exhibit A, paragraph entitled "Sample Approval."*

25. Under the License Agreement, the final production of the Licensed Products were to consistently bear Fish Kiss branding, labeling and packaging. *See Exhibit A, paragraph entitled "Product Packaging and Branding."*

26. Under the Schedule of Artwork annexed to the License Agreement ("Schedule of Artwork"), the NSC Defendants agreed to pay Klein royalties as follows: Christmas stockings: 15% of wholesale cost; Christmas tree skirts: 15% of wholesale cost; Adult kitchen aprons: 15% of wholesale cost; Cotton tea/dish towels: 15% of wholesale cost; Decorative pillows: 20% of wholesale cost. *See Exhibit A, "Schedule of Artwork"*

27. Under the Schedule of Artwork, royalty payments were required to be issued within thirty (30) days of the shipment of Licensed Products to NSC's customers. *See Exhibit A, "Schedule of Artwork"*

28. The License Agreement states that, "[i]n the event of any litigation arising out of or relating to this Agreement, the prevailing party shall be entitled to recover its attorneys' fees incurred in the litigation." *See Exhibit A, paragraph entitled "General Law/Arbitration."*

29. Klein received total payments in the amount of $2,143.65 as royalties for the sale of the Licensed Products. See **Exhibit B** for the Royalty Statements provided by the NSC Defendants to Klein for the time period of January 1, 2016 to December 31, 2016.

30. The NSC Defendants represented in the Royalty Statements that it had total sales in the amount of $13,895 from Licensed Products from January 1, 2016 to December 31, 2016. *Id.*

31. Notwithstanding the NSC Defendants' representations, in January 2017, Klein received an email, attached as **Exhibit C**, from Dan Kennedy, an NSC sales representative, in which he stated that he alone had sold approximately $18,000 to $25,000 of product for the NSC Defendants, with the Licensed Products representing approximately 60% of his sales, or roughly at least $11,000 of Licensed Product.

32. In September 2016 the NSC Defendants sent Klein a proposal for renewal of the License Agreement (attached as **Exhibit D**).

33. In this proposal, the NSC Defendants represented to Klein that the total combined sales of tea towels, aprons, Christmas stockings and Christmas tree skirts amounted to $5,408.00. This represented their annual sales of these Licensed Products through August 31, 2016.

34. Notwithstanding the above representation, the NSC Defendants had conflictingly informed Klein in May 2016 that they had run out of the 1,000 tea towel packaging wrappers and needed to order another 1,000 wrappers. Since the NSC Defendants were selling the tea towels for approximately $5.50 **- $6.00** each, the sale of 1,000 tea towels would equal $5,550 **to $6,000** in sales by May 2016.

**35. Upon a review of further invoices and sales records, Plaintiffs have discovered that at least an additional $10,561.50 in sales of Licensed Product were made by the NSC Defendants.**

36. The NSC Defendants have willfully misrepresented the amount of sales of Licensed Products to avoid paying Klein appropriate royalties due.

37. Pursuant to the License Agreement, the NSC Defendants **were to pay** royalties to Klein within thirty (30) days of shipment of Licensed Product to the NSC Defendants' customers.

38. Despite the NSC Defendants' contractual obligations to make royalty payments within **such** thirty (30) day **period**, the NSC Defendants did not pay Klein royalties from sales of Licensed Product made in November until January 28, 2017.

39. Pursuant to the terms of the License Agreement, the license terminated one year from the effective date thereof, or January 1, 2017, with no **applicable or allowable** sell-off period. Accordingly, the NSC Defendants had a contractual obligation to cease manufacture, production and distribution of Licensed Products by no later than January 1, 2017.

40. Klein and Fish Kiss discovered that one of the NSC Defendants' customers, Quaile Connect, LLC, had taken orders for Licensed Product at the Philadelphia Gift Show, held on January 6, 2017.

41. **Klein and Fish Kiss also discovered that the NSC Defendants sold Licensed Product to a retailer called ETShops in February 2017, to be shipped on April 4, 2017.**

42. Klein and Fish Kiss also discovered, on or about April 17, 2017, that one of the NSC Defendants' customers posted a Christmas Tree Skirt with Fish Kiss Artwork for sale on eBay. The posting included an unauthorized high resolution image of Fish Kiss Artwork of its map of California. An image of this eBay listing is attached as **Exhibit E**.

43. The NSC Defendants distributed Licensed Products to its customers, exploiting, and allowing the exploitation, of the Fish Kiss Artwork after the rights granted under the License Agreement had terminated.

44. The NSC Defendants failed to pay Klein or Fish Kiss any royalties for Licensed Products sold after January 1, 2017.

45. Pursuant to the License Agreement, the NSC Defendants were required to obtain Klein's approval for any new iterations of Licensed Products. Despite this contractual obligation, Klein discovered products being sold via Ebay.com and Amazon.com which had not been approved by Klein, including without limitation, decorative pillows which were of unapproved sizing and contained unapproved piping. Exemplars of unapproved Licensed Products are attached as **Exhibit F**.

46. The NSC Defendants designed, manufactured, produced and distributed unapproved Licensed Products.

47. Under the terms of the License Agreement, all Licensed Products were to bear Fish Kiss branding, labeling and packaging.

48. The NSC Defendants sold Licensed Products that did not include Fish Kiss branding, labeling and packaging in violation of the License Agreement. Exemplars of nonconforming Licensed Products and packaging are attached as **Exhibit G**.

49. Under the terms of the License Agreement, the NSC Defendants did not have any right to modify the Fish Kiss Artwork without the written consent of Klein. Nonetheless, Klein discovered that the NSC Defendants had modified the Fish Kiss Artwork without informing Klein of such modifications or written consent from Klein. An exemplar of the unauthorized, modified work is attached as **Exhibit H**.

**<u>Plaintiffs' Assertion of Copyright Infringement against Defendants</u>**

50. Fish Kiss is the owner of a valid and enforceable U.S. copyright registration for Fish Kiss' Kentucky map artwork design ("Fish Kiss Kentucky Artwork"), namely, U.S. Copyright Registration No. VA 2-049-471. A copy of the U.S. Copyright Registration for the Fish Kiss Kentucky Artwork, along with the corresponding deposit material, is attached as **Exhibit I**.

51. The NSC Defendants, Godwin and Bernstein modified, manufactured, promoted, distributed and sold product bearing derivative works of the Fish Kiss Kentucky Artwork, as set forth in Exhibit G in violation of U.S. Copyright Laws.

52. Upon information and belief, Godwin and Bernstein directed the modification, creation, manufacture, promotion, distribution and sales of product bearing derivative works of the Fish Kiss Kentucky Artwork.

53. The NSC Defendants, Godwin and Bernstein were aware that the copyrights in and to the Fish Kiss Kentucky Artwork were owned by Fish Kiss, and were aware that Fish Kiss had the exclusive right to create derivative works from the Fish Kiss Kentucky Artwork.

54. The NSC Defendants, Godwin and Bernstein willfully and knowingly violated Fish Kiss' exclusive rights in and to the Fish Kiss Kentucky Artwork in violation of U.S. Copyright Law.

55. Fish Kiss is the owner of forty-eight valid and enforceable U.S. copyright registrations for the Fish Kiss Artwork designs.

56. Under the terms of the License Agreement, the NSC Defendants' rights to manufacture, import, promote, publicly display and sell the Licensed Products bearing the Fish Kiss Artwork terminated on January 1, 2017.

57. The NSC Defendants continued to import, distribute, promote, publicly display, and sell the Licensed Products after January 1, 2017.

58. Upon information and belief, after the termination of the License Agreement, the NSC Defendants sold product bearing the copyrighted Fish Kiss Artwork, specifically, product bearing Fish Kiss' Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, Virginia, West Virginia, Wisconsin and Wyoming designs.

59. On February 9, 2017, then-counsel for Fish Kiss and Klein sent a letter to Defendants alleging that the NSC Defendants, Godwin and Bernstein had violated Fish Kiss' copyrights, as set forth above. This correspondence demanded that the NSC Defendants, Godwin and Bernstein cease the manufacture, sale and distribution of the Fish Kiss Artwork and derivatives thereof and that the NSC Defendants recalculate their sales of the Licensed Products and remit proper payment of royalties to Klein.

60. On March 2, 2017, Robert A. Gleaner, counsel for the NSC Defendants, Godwin and Bernstein, **briefly** responded by **simply dismissing** Klein's and Fish Kiss' allegations.

61. On August 10, 2017, counsel for Fish Kiss and Klein sent a letter to counsel for Defendants outlining the various breaches of contract and copyright violations, and again demanding that Defendants remedy such violations and provide a proper accounting of sales of Licensed Product.

62. On August 10, 2017, counsel for Defendants denied one of Klein's and Fish Kiss' allegations and completely ignored the remainder of the allegations set forth in Klein's and Fish Kiss' August 10, 2017 letter. Copies of the four letters referenced herein are attached as **Exhibit J**.

**Plaintiffs' Assertion of False Advertising Against Defendants**

**63. The Licensed Product and the Infringing Kentucky Product bore the Fish Kiss Trademark for at least a portion of the term of the License.**

64. **The Licensed Product consistently bore a sewn-in label which stated that the Licensed Product was "MADE IN USA."**

65. **The NSC Defendants consistently advertised and promoted the Licensed Product as "Made in America" and "Made in USA."**

66. **The NSC Defendants purchased raw textile fabric from a textile distributor and supplier from which to manufacture the finished Licensed Product.**

**67. The raw textile materials purchased by the NSC Defendants from the textile distributor and supplier were a "Non-Optic White" 100% certified organic cotton canvas fabric and an "Optic White" 100% cotton canvas fabric.**

68. **The textile distributor and supplier does not manufacture, distribute or sell any canvas fabrics that are manufactured in the United States of America.**

69. **The NSC Defendants willfully and materially misrepresented and falsely advertised that the Licensed Product and materials comprising the Licensed Product was made in the United States.**

70. **This material misrepresentation inured to the detriment of Fish Kiss, since the Fish Kiss name, trademarks and brand was associated with the Licensed Product.**

71. **This material misrepresentation has caused damage to Fish Kiss' brand, trademarks, goodwill and reputation, and acts to impair the goodwill of Fish Kiss.**

72. **This material misrepresentation has caused and will continue to cause difficulties in the future for Fish Kiss in its attempts to sell product and do business under the Fish Kiss brand and trademarks, since such material misrepresentation has been and will be attributed to Fish Kiss, LLC and Anne Klein.**

**COUNT ONE – BREACH OF CONTRACT (Against the NSC Defendants)**

(Failure to Pay and Make Timely Royalties Due)

73. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74. Plaintiffs have performed all duties, promises, and obligations required of Plaintiffs and all conditions precedent that Plaintiffs agreed to perform under the License Agreement.

75. Under the terms of the License Agreement, the NSC Defendants were required to pay royalties to Klein within thirty (30) days for all sales of Licensed Product upon the shipment of Licensed Product to the NSC Defendants' customers.

76. Upon information and belief, the NSC Defendants have withheld a full and complete accounting of the accurate amount of sales of the Licensed Products.

77. Upon information and belief, the NSC Defendants have withheld this information with willful and deceptive intent to avoid paying the full amount of royalties due to Klein.

78. The NSC Defendants paid royalties to Klein for Licensed Products shipped in November 2016, on January 28, 2017, almost sixty days late, after such royalties were due and owing.

79. Upon information and belief, the NSC Defendants have failed to pay royalties to Klein for shipped Licensed Products due and owing to Klein, at various times in 2016, and such failures constitute a breach of the License Agreement.

80. The NSC Defendants have failed and refused, and continue to fail and refuse, to pay royalties to Klein for all sales of the Licensed Products.

81. The NSC Defendants' breach of the terms of the License Agreement has caused Plaintiff Klein harm.

82. As a result of the NSC Defendants' breach of the License Agreement, Plaintiffs have suffered general and consequential damages, including monies due and owing for royalties and interest thereon. Plaintiffs are therefore entitled to damages in an amount to be determined at trial.

**COUNT TWO – BREACH OF CONTRACT (Against the NSC Defendants)**
(Failure to Cease Use of Fish Kiss Artwork and Sale of Licensed Product Upon Termination of the Agreement)

83. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84. Plaintiffs have performed all duties, promises, and obligations required of Plaintiffs and all conditions precedent that Plaintiffs agreed to perform under the License Agreement.

85. Under the terms of the License Agreement, all rights in and to the Fish Kiss Artwork reverted to Klein and Fish Kiss on January 1, 2017, and the NSC Defendants' rights to manufacture, import, promote, publicly display and distribute the Licensed Products and otherwise exploit the Fish Kiss Artwork immediately terminated.

86. Despite this fact, and upon information and belief, the NSC Defendants continued to manufacture, import, promote, publicly display and distribute the Licensed Products and otherwise exploit the Fish Kiss Artwork after the termination of the License Agreement.

87. The NSC Defendants' continued manufacture, importation, promotion, public display and distribution of the Licensed Products, and continued exploitation of the Fish Kiss Artwork after the termination of the License Agreement constitutes a breach of the License Agreement.

88. As a result of the NSC Defendants' breach of the License Agreement, Plaintiffs have suffered damages for which there is no adequate legal remedy at law. Plaintiffs are therefore entitled to equitable relief in the form of injunctive relief and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which have been obtained by the NSC Defendants as a result of such actions.

**COUNT THREE – BREACH OF CONTRACT (Against the NSC Defendants)**
(Failure to Obtain Approval of Licensed Products Prior to Distribution, Failure to Include Fish Kiss Branding, Labeling and Packaging, and Unauthorized Modification of Fish Kiss Artwork)

89. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. Plaintiffs have performed all duties, promises, and obligations required of Plaintiffs and all conditions precedent that Plaintiffs agreed to perform under the License Agreement.

91. Under the terms of the License Agreement, the NSC Defendants had a duty and obligation to obtain approval for any new Licensed Products prior to offering said products for distribution, a duty and obligation to include Fish Kiss branding, labeling and packaging on all Licensed Products, and a contractual prohibition against modifying the Fish Kiss Kentucky Artwork without written consent and authorization.

92. Despite this fact, and upon information and belief, the NSC Defendants designed, manufactured, promoted, distributed and sold new Licensed Products without obtaining approval from Klein, as demonstrated in **Exhibit K**.

93. The NSC Defendants failed to include approved Fish Kiss branding, labeling and packaging on at least a portion of the Licensed Products, and instead included only the NSC Defendants' branding, labeling and packaging on the Licensed Products.

94. Despite the contractual prohibition, the NSC Defendants modified the Fish Kiss Kentucky Artwork without notifying Fish Kiss or Klein and without obtaining written consent and/or authorization to do so.

95. The NSC Defendants' failure to obtain Fish Kiss' or Klein's approval for said products, failure to include the Fish Kiss branding, labeling and packaging on the Licensed Products, and the modification of Fish Kiss Kentucky Artwork without Fish Kiss' authorization constitutes a breach of the License Agreement.

96. As a result of the NSC Defendants' breach of the License Agreement, Plaintiffs have suffered damages for which there is no adequate legal remedy at law. Plaintiffs are therefore entitled to equitable relief in the form of injunctive relief and full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which have been obtained by the NSC Defendants as a result of such actions.

**COUNT FOUR – COPYRIGHT INFRINGEMENT (Against the NSC Defendants)**
**(Copyright Infringement of Fish Kiss Kentucky Artwork)**

97. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98. Plaintiffs are the owners of a valid and enforceable U.S. Copyright Registration for the Fish Kiss Kentucky Artwork, and are the creators and owners of the Fish Kiss Kentucky Artwork design.

99. The NSC Defendants have infringed the Fish Kiss Kentucky Artwork by copying from Plaintiff, modifying the Fish Kiss Kentucky Artwork design, and subsequently manufacturing, importing, promoting, publicly displaying, distributing and otherwise selling derivatives of the Fish Kiss Kentucky Artwork design ("Infringing Kentucky Design").

100. The NSC Defendants had direct access to and copied the Fish Kiss Kentucky Artwork design.

101. The Infringing Kentucky Design is strikingly similar to and/or is a derivative work of the Fish Kiss Kentucky Artwork design, as demonstrated by **Exhibit L.**

102. Plaintiffs have not authorized the copying of the Fish Kiss Kentucky Artwork design or the distribution of any unauthorized copies by the NSC Defendants in any format or otherwise.

103. The NSC Defendants' creation, publication, display and use of the Infringing Kentucky has infringed and, if not terminated, continues to infringe upon Plaintiffs' rights in the Fish Kiss Kentucky Artwork.

104. The NSC Defendants knew or should have known that Plaintiffs' permission was required to make and distribute copies of the Infringing Kentucky Design, and such infringement compromises Plaintiffs' Fish Kiss Kentucky Artwork.

105. The NSC Defendants intentionally, wantonly, and/or recklessly disregarded rights they knew or reasonably should have known were claimed in Plaintiffs' Fish Kiss Kentucky Artwork, when creating or causing the manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design.

106. Plaintiffs, through counsel, have requested of the NSC Defendants to cease infringing activities described above and to account for all uses and profits of the NSC Defendants, but the NSC Defendants expressly refused to provide an accounting and has expressly refused to cease the manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design.

107. The NSC Defendants continued manufacture, import, promotion, public display and distribution of the Infringing Kentucky Design after the notice to cease and desist shows willfulness of their copyright infringement.

108. As a result of their wrongful conduct, the NSC Defendants are liable to Plaintiffs for copyright infringement pursuant to 17 U.S.C. §501.

109. The NSC Defendants have profited from the infringing activities described above.

110. The NSC Defendants' infringement of Plaintiffs' copyrighted Fish Kiss Kentucky Artwork has directly and proximately caused Plaintiffs monetary damages including lost sales, in an amount thus far not determined, and subject to proof at trial.

111. Plaintiffs have lost profits as a result of the NSC Defendants' infringement, in an amount thus far not determined and subject to proof at trial.

112. Plaintiffs are entitled to recover actual damages for its licensing fees and royalties for the work under 17 U.S.C. §504(b).

113. As a result of the NSC Defendants' acts of infringement, the NSC Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for their infringement of the Fish Kiss Kentucky Artwork design. As such, Plaintiffs are entitled to disgorgement of the NSC Defendants' profits directly and indirectly attributable to the NSC Defendants' infringement of the Fish Kiss Kentucky Artwork design in an amount to be established at trial.

**COUNT FIVE – COPYRIGHT INFRINGEMENT (Against the NSC Defendants)**
**(Copyright Infringement of Fish Kiss Artwork)**

114. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

115. Plaintiffs are the owners of forty-eight (48) valid and enforceable U.S. Copyright Registrations for the Fish Kiss Artwork, and are the creators and owners of the Fish Kiss Artwork.

116. The NSC Defendants had direct access to and copied the Fish Kiss Artwork.

117. Plaintiffs did not authorize the NSC Defendants, and the NSC Defendants did not obtain permission, to manufacture, import, promote, publicly display, distribute and/or

otherwise sell products bearing the Fish Kiss Artwork after the termination of the License Agreement.

118. The NSC Defendants manufactured, imported, promoted, publicly displayed, distributed and otherwise sold products bearing the Fish Kiss Artwork after termination of the License Agreement ("Infringing Licensed Products").

119. The acts of the NSC Defendants constitute copyright infringement, and if not terminated, continue to infringe Plaintiffs' rights in the copyrighted Fish Kiss Artwork.

120. The NSC Defendants knew or should have known that Plaintiffs' permission was required to manufacture, import, promote, publicly display and distribute the Infringing Licensed Products, and such infringement compromises Plaintiffs' Fish Kiss Artwork.

121. The NSC Defendants intentionally, wantonly, and/or recklessly disregarded rights they knew or reasonably should have known were claimed in Plaintiffs' Fish Kiss Artwork, when creating or causing the manufacture, importation, promotion, public display, and distribution of the Infringing Licensed Products.

122. Plaintiffs, through counsel, have requested of the NSC Defendants to cease infringing activities described above and to account for all uses and profits of the NSC Defendants, but the NSC Defendants expressly refused to provide an accounting and have expressly refused to cease the manufacture, importation, promotion, public display, and distribution of the Infringing Licensed Products.

123. The NSC Defendants' continued manufacture, importation, promotion, public display and distribution of the Infringing Licensed Products after the notice to cease and desist shows willfulness of their copyright infringement.

124. As a result of their wrongful conduct, the NSC Defendants are liable to Plaintiffs for copyright infringement pursuant to 17 U.S.C. §501.

125. The NSC Defendants have profited from the infringing activities described above.

126. The NSC Defendants' infringement of Plaintiffs' copyrighted Fish Kiss Artwork has directly and proximately caused Plaintiffs monetary damages including lost sales, in an amount thus far not determined, and subject to proof at trial.

127. Plaintiffs have lost profits as a result of the NSC Defendants' infringement, in an amount thus far not determined and subject to proof at trial.

128. Plaintiffs are entitled to recover its actual damages, for licensing fees and royalties for the work under 17 U.S.C. §504(b).

129. As a result of the NSC Defendants' acts of infringement, the NSC Defendants, and each of them, have obtained direct and indirect profits that they would not otherwise have realized but for their infringement of the Infringing Licensed Products. As such, Plaintiffs are entitled to disgorgement of the NSC Defendants' profits directly and indirectly attributable to the NSC Defendants' infringement of the Fish Kiss Artwork in an amount to be established at trial.

**COUNT SIX – VICARIOUS and/or CONTRIBUTORY COPYRIGHT INFRINGEMENT (Against Godwin and Bernstein)**

130. Plaintiffs repeat, reallege and incorporate herein by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

131. Defendants Godwin and Bernstein are officers, directors and/or owners of the NSC Defendants.

132. Defendants Godwin and Bernstein knowingly induced, participated in, aided and abetted and profited from the illegal reproduction and/or subsequent sales of the Infringing Kentucky Design and the Infringing Licensed Products.

133. Defendants Godwin and Bernstein are vicariously liable for the infringement alleged herein regarding the Infringing Kentucky Design and the Infringing Licensed Products because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

134. By way of Defendant Godwin and Bernstein's acts of contributory and vicarious infringement as alleged above, Plaintiffs have suffered, and will continue to suffer, substantial damages to its business in an amount to be established at trial.

**COUNT SEVEN – FALSE ADVERTISING (Lanham Act § 43(a)) (Against the NSC Defendants)**

**135. Plaintiffs repeat, reallege and incorporate by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.**

**136. The NSC Defendants have included conspicuous designations on the Licensed Products that the products were "MADE IN USA." An exemplar of the label on the Licensed Product is attached as Exhibit M.**

**137. The NSC Defendants knew or should have known that the textile fabric it used to create the Licensed Products was not made in the United States.**

**138. The false designation made by the NSC Defendants that the Licensed Products were made in the United States was material, false, and misleading.**

**139. Upon information and belief, the false "MADE IN USA" designation deceived a substantial portion of intended and actual consumers of the Licensed Products into believing that the Licensed Products were manufactured in the United States.**

**140. The Licensed Products were sold in United States interstate commerce.**

**141. A significant portion of the Licensed Products bearing the false designation "MADE IN USA" included Fish Kiss' trademarks and brand name, thus designating Fish Kiss as the source of the Licensed Products.**

**142. Due to the NSC Defendants' false advertising in connection with the Licensed Products, Plaintiffs have suffered, and will continue to suffer, damage to the Fish Kiss business, goodwill, trademarks and brand.**

## COUNT EIGHT – VIOLATION OF N.J. UNFAIR TRADE PRACTICES ACT (N.J. § 56:8-2) (Against the NSC Defendants)

**143. Plaintiffs repeat, reallege and incorporate by reference as though fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.**

**144. The NSC Defendants' false and misleading statement that the Licensed Products were made in the United States was made to the general consuming public.**

**145. The NSC Defendants' false and misleading statement that the Licensed Products were made in the United States was made with the intent of promoting the purchase and sale of the Licensed Products.**

**146. The NSC Defendants' false and misleading statement was a material misrepresentation made with the intent of deceiving the consuming public.**

**147. Due to the NSC Defendants' false advertising in connection with the Licensed Products, Plaintiffs have suffered damage to the Fish Kiss business and goodwill since the Licensed Products bore the Fish Kiss trademark and branding, and consumers will believe that Fish Kiss made the material and misleading representation.**

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand:

1. That judgment be entered against the NSC Defendants for three counts of breach of contract, and for copyright infringement;

2. That judgment be entered against Bernadette Godwin and Eric Bernstein for vicarious and contributory copyright infringement;

3. That judgment be entered against the NSC Defendants for a violation of the Lanham Act under 15 U.S.C. § 1125(a) for false advertising;

4. That judgment be entered against the NSC Defendants for a violation of New Jersey Unfair Trade Practices, Section 56:8-2 for false advertising;

5. That an injunction be issued enjoining the NSC Defendants, their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them:
    a. From infringing Plaintiffs' copyrights in any manner;
    b. From further manufacture, importation, promotion and/or distribution of the Licensed Products, the Infringing Kentucky Products and the Infringing Licensed Products;

6. That the NSC Defendants be required to provide Plaintiffs with a full, complete and accurate accounting of all royalties due and owing to Plaintiffs under the License Agreement, to be performed by a third party certified accountant;

7. That the NSC Defendants be required to destroy any electronic copies of the Fish Kiss Artwork and provide certification of such destruction;

8. That the NSC Defendants' computers and/or computer files be impounded to ensure destruction of electronic files containing the Fish Kiss Artwork;

9. That the NSC Defendants be required to destroy any and all remaining Infringing Kentucky Products, Infringing Licensed Products and Fish Kiss Artwork in their inventory;

10. That the NSC Defendants be required to recall any Infringing Kentucky Products from their retail customers;

11. That Plaintiffs be awarded all profits of Defendant plus all losses of Plaintiffs, plus any other monetary advantage gained by the Defendants through their infringement, the exact sum to be proven at the time of trial and as available under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*;

12. That Plaintiff be awarded damages in an amount sufficient to compensate it for its losses and other harm caused by Defendant as a result of Defendants' false advertising as available under the Lanham Act, 15 U.S.C. § 1025 *et seq*.;

13. That Plaintiff be awarded damages in an amount sufficient to compensate it for its losses and other harm caused by Defendant as a result of Defendants' unfair trade practices as available under New Jersey Code § 58-.8-2 *et seq.*;

14. That Plaintiffs be awarded punitive damages;

15. That Plaintiffs be awarded its attorneys' fees pursuant to the terms of the License Agreement and as the prevailing party in this action;

16. That Plaintiffs be awarded pre-judgment interest as allowed by law;

17. That Plaintiffs be awarded the costs of this action; and

18. That Plaintiffs be awarded such further legal and equitable relief as the Court deems proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

Dated: May 14, 2018

Respectfully submitted,

By: Jessie Christine Basner

Jessie Christine Basner, Esq.
Clemente Mueller, P.A.
222 Ridgedale Avenue, Floor 2
Cedar Knolls, New Jersey 07827
Telephone: (973) 455-8008
Email: jbasner@cm-legal.com
*Attorneys for Plaintiff Fish Kiss LLC*