IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FISH KISS LLC & ANNE KLEIN, | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action No.<br>17-8193 (JBS/AMD) |
| NORTH STAR CREATIONS, LLC;<br>ROOTED MADE; ROOTEDUSA;<br>BERNADETTE GODWIN; ERIC<br>BERNSTEIN; and JOHN DOES 1-10, | **OPINION** |
| Defendants. | |

APPEARANCES:

Jessie Basner, Esq.
CLEMENTE MUELLER PA
P.O. Box 1296
Morristown, NJ 07962
    Attorney for Plaintiffs

Robert McKinley, Esq.
LAULETTA BIRNBAUM LLC
591 Mantua Blvd., Suite 200
Sewell, NJ 08080
    Attorney for Defendants

**SIMANDLE, District Judge:**

## I.  Introduction

This case arises out of the alleged copyright infringement

and breach of contract by Defendants North Star Creations, LLC;

Rooted Made; Rooted USA; Bernadette Godwin, and Eric Bernstein.

The action was brought by Fish Kiss, LLC, a corporation founded

by Anne Klein who was later added as a plaintiff (collectively, "Plaintiffs"). [Docket Item 14.]

Citing a lack of specificity as to the copyright claim, lack of standing, and lack of an enforceable contract, Defendants moved to dismiss all counts of Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6) or in the alternative, for an order requiring Plaintiffs to submit a more definite statement pursuant to Fed. R. Civ. P. 12(e). [Docket Items 13 ("First Motion to Dismiss") and 51 ("Second Motion to Dismiss").] Additionally, Defendants have alternatively moved for summary judgment under Fed. R. Civ. P. 56 with regard to Count 5.

The issues to be decided include whether violation of the scope of an exclusive license can serve as the basis for a breach of contract claim; whether the "first sale" doctrine is applicable to Plaintiffs' copyright infringement claims; whether Plaintiffs have adequately pled their copyright infringement claims; the adequacy of the claims pled against the Individual Defendants; whether Plaintiffs state a claim under the Lanham Act (or whether summary judgment is warranted on that claim); and whether Plaintiffs have standing to pursue a claim under the New Jersey Consumer Fraud Act. For the reasons discussed below, the Court will grant in part and deny in part Defendants' Second Motion to Dismiss.

## II. Background

### A. Factual Background

Plaintiff Anne Klein is the President of Fish Kiss, LLC ("Fish Kiss"). Fish Kiss is a "small lifestyle brand company that specializes in the creation of unique designs and artwork." [Docket Item 45 at 1.] Fish Kiss owns fifty-one artwork designs for which each design is copyrighted (Copyright Registration no. VA 2-049-471). Id. at 2. Bernadette Godwin ("Godwin") and Eric Bernstein ("Bernstein")(collectively, "Individual Defendants") are the owners of North Star, LLC ("North Star"). Id. at 15. North Star LLC is a manufacturer of textile products. The Individual Defendants, North Star, and its subsidiaries, RootedUSA and Rooted Made, are collectively referred to as "Defendants." Id. at 2.

On January 1, 2016, Plaintiffs and Defendants executed a one-year license agreement ("License Agreement") for Fish Kiss Artwork. Id. at 3. The License Agreement granted Defendants the exclusive right to manufacture and sell Christmas stockings, Christmas tree skirts, adult kitchen aprons, cotton tea/dish towels and decorative pillows bearing Fish Kiss artwork ("Licensed Products"). Id. The term of the License Agreement began on January 1, 2016 and continued until January 1, 2017 with no residual sell-off period after termination. Id. Under

the License Agreement, Klein had the right to review and approve new iterations of the Licensed Products for sample approval before they were permitted to be offered for sale. Id. Under the License Agreement, the Licensed Products were to consistently bear Fish Kiss branding, labeling, and packaging. Id. at 4. Under the Schedule of Artwork annexed to the License Agreement, Defendants were to pay Klein royalties of 15% of wholesale cost of Christmas stockings, Christmas tree skirts, adult kitchen aprons, and cotton tea/dish towels, and 20% of wholesale cost of decorative pillows. Id. Defendants were required to remit royalty payments within thirty days of the shipment of Licensed Products to Defendants' customers. Id.

Defendants represented to Plaintiffs that they had total sales in the amount of $13,895.00 from the Licensed Products from January 1, 2016 to December 31, 2016. Id. Plaintiffs allege that Defendants have willfully misrepresented the amount of sales of Licensed Products to avoid paying Klein appropriate royalties due. Id. at 5. As evidence, Plaintiffs submit that, in May 2016, Defendants requested an order for 1,000 additional wrappers. Id. Defendants sold the wrappers for approximately $5.50 to $6.00 each. Id. Plaintiffs allege that the May 2016 sale alone would equal $5,550 to $6,000 in sales. Id. Nevertheless, in September 2016, Defendants sent Plaintiffs a proposal for renewal of the license, representing that their

year-to-date sales of Licensed Products through August 31, 2016 amounted only to $5,408. Id. Plaintiffs also point to an email Klein received in January 2017 from North Star sales representative Dan Kennedy, stating that he alone sold $11,000 worth of Licensed Products. Id. at 4. Plaintiffs allege that they have discovered an additional $10,561.50 in sales of Licensed Products unaccounted for in the $13,895 figure presented by Defendants. [Id.]

Plaintiffs received payments in the amount of $2,143.65 as royalties for the time period of January 1, 2016 to December 31, 2016. Id. Plaintiffs allege that Defendants did not make royalty payments from sales made in November of 2016 until January 28, 2017, in violation of the License Agreement. Id. at 5. Plaintiffs allege that one of Defendants' customers, Quaile Connect, LLC, placed orders for Licensed Products on January 6, 2017. Id. at 5. Plaintiffs allege that Defendants sold Licensed Product to ETShops in February 2017. Id. Plaintiffs allege that Defendants posted an unauthorized alteration of a Fish Kiss Christmas Tree Skirt on eBay, id., and that Defendants sold new iterations of Licensed Products on eBay and Amazon without the approval of Plaintiffs. Id. at 6.

## B. Procedural Background

On February 9, 2017, Plaintiffs sent a letter to Defendants alleging that Defendants violated the copyrights and demanded

that Defendants cease manufacture, sale, and distribution of the Licensed Products. Id. at 7. The letter also requested a recalculation of Defendant's sales of Licensed Products as well as proper payment of royalties. Id. at 8.

Plaintiffs subsequently filed the original complaint on October 12, 2017. [Docket Item 1.] Count 1 alleges a breach of contract for Defendants' failure to make timely royalty payments. Id. at 10. Count 2 alleges breach of contract for Defendants' failure to cease use and sale of licensed products upon termination of the license. Id. at 11. Count 3 alleges breach of contract for Defendants' failure to obtain approval of modified licensed products prior to distribution as well as failure to include Fish Kiss branding, labeling, and packaging. Id. at 12. Counts 4 and 5 allege copyright infringement for Defendant's violation of the license agreement under 12 U.S.C. § 504(b) and for violation of Plaintiffs' exclusive rights under 12 U.S.C. § 106, respectively. Id. at 18. Count 6 alleges vicarious and/or contributory liability for copyright infringement against the Individual Defendants. Id. at 18. Count 8 alleges False Advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), in connection with Defendants using a "Made in America" designation on the Licensed Products, as Plaintiffs allege that Defendants manufactured Licensed Products at least partially outside the United States. Id. at 19. Count 9 alleges

violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56-8-2 ("CFA"), in connection with the "Made in America" designation.

Defendants then filed a motion to dismiss several of Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. [Docket Item 13 ("First Motion to Dismiss").] With regard to Counts 8 and 9, Defendants asserted in the First Motion to Dismiss that they manufacture all of their products in a facility in Medford, New Jersey. Id. at 16. Defendants requested dismissal of Count 8 for failure to state a claim or, in the alternative, summary judgment pursuant to Fed. R. Civ. P. 56. Id. at 13. Defendants also sought dismissal of Count 9 for lack of standing. Id. at 16. Defendants argued that because the Licensing Agreement was between Anne Klein and Defendants [Docket Item 1-11], Fish Kiss did not have standing as the real party in interest under Fed. R. Civ. P. 17(a) with regard to the contractual claims. [Docket Item 13 at 7.] Defendants also requested dismissal of Plaintiffs' copyright claims (Counts 4 & 5) pursuant to the first sale doctrine, 17 U.S.C. § 109(a). Id. at 10. Defendants requested dismissal (or, in the alternative, a more definite statement of a pleading pursuant to Fed. R. Civ. P. 12(e)) with regards to Plaintiff's copyright infringement claims (Counts 4-6). Id. at 12. Defendants also requested

dismissal of Count 6 (claims against the Individual Defendants).
Id.[1]

In lieu of a Response, Plaintiffs filed their First Amended
Complaint ("FAC") on December 20, 2017. [Docket Item 14.] In it,
Anne Klein was named as a plaintiff, which addressed Defendants'
arguments under Fed. R. Civ. P. 17(a) as to Fish Kiss's
standing. Id. The FAC specified which copyrighted materials were
allegedly being infringed (namely: products bearing Fish Kiss's
Alabama, Arizona, California, Colorado, Connecticut, Delaware,
Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa,
Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan,
Minnesota, Missouri, Montana, Nebraska, New Hampshire, New
Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma,
Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Vermont,
Virginia, West Virginia, Wisconsin, and Wyoming designs). Id. at
9. Plaintiff withdrew Counts 8 and 9 without prejudice and
reserved the right to reinstate the claims upon the discovery of
further corroborating evidence. Id. at 19. Subsequently,
Plaintiffs filed a Response in Opposition to Defendants' Motion

---

[1] Defendants' Second Motion to Dismiss no longer moves to dismiss
Count Six (against the Individual Defendants). [Docket Item 51-
1.] However, in the interests of addressing all arguments raised
by Defendants and to the extent that filing the Answer to the
FAC did not moot Defendants' First Motion to Dismiss, the Court
addresses this argument at Section IV.D., infra.

to Dismiss on December 20, 2017, addressing the other arguments in Defendants' First Motion to Dismiss. [Docket Item 15.]

Defendants filed an Answer to the FAC (including the assertion of counterclaims against Plaintiffs). [Docket Item 16.]

In apparent service of attempting to reinstate their false advertising claims, Plaintiffs contacted Defendants' cloth and fabric supplier via email on April 4, 2018, inquiring whether their "canvas material in both optic white and white is also milled in the U.S.A." [Docket Item 40-6 at 12]. In response, the supplier stated that they "do not have any canvas fabrics that are Made in the USA. This is due to the lack of woven mills that exist in the USA today." Id.

By leave of the Court [Docket Item 44], Plaintiffs filed their Second Amended Complaint on May 14, 2018. [Docket Item 45 ("SAC").] In light, apparently, of the information gained from the April 4, 2018 email exchange, Plaintiffs reinstated as Counts 7 and 8 their False Advertising and Unfair Trade Practices claims under the Lanham Act, § 43(a), and the CFA, N.J.S.A. § 56:8-2, respectively. Id. at 15-16.

Because the SAC is now the operative Complaint in this case, the Court restates its claims, briefly:

1. Breach of Contract Against NSC Defendants (for failure to pay and make timely royalties due) [Docket Item 45 at 9-10];

9

2. Breach of Contract Against NSC Defendants (for
   failure to cease use of Fish Kiss Artwork and Sale
   of Licensed Product upon Termination of the
   Agreement) [id. at 10];

3. Breach of Contract Against the NSC Defendants (for
   failure to obtain approval of licensed products
   prior to distribution; failure to include Fish Kiss
   branding, labeling, and packaging; and unauthorized
   modification of Fish Kiss artwork) [id. at 10-11];

4. Copyright Infringement Against the NSC Defendants
   (for copyright infringement of Fish Kiss Kentucky
   artwork) [id. at 11-13];

5. Copyright Infringement Against the NSC Defendants
   (for copyright infringement of Fish Kiss artwork)
   [id. at 13-15];

6. Vicarious and/or Contributory Copyright
   Infringement Against Defendants Godwin and
   Bernstein [id. at 15];

7. False Advertising under the Lanham Act, § 43(a)
   Against the NSC Defendants [id. at 15-16]; and

8. "Violation of N.J. Unfair Trade Practices Act (N.J.
   § 56:8-2)" Against the NSC Defendants [id. at 16-
   17].

In response, Defendants filed the Second Motion to Dismiss
the SAC (along with a brief in support of that Motion) on June
29, 2018. [Docket Item 51.] The Second Motion (to dismiss the
SAC) is, for all intents and purposes, identical to the motion
to dismiss Plaintiffs' original complaint; it omits only
Defendants' motion to dismiss the case on the grounds that Fish

Kiss (but not Klein) lacked standing.[5] Again, in the interests of

clarity, the Court restates its essential arguments:

1. Count Two should be dismissed for failure to state
   a claim because there can be no breach of contract
   after the License Agreement terminated;
2. Counts Four through Six should be dismissed under
   the "first sale" doctrine;
3. Counts Three through Six should also be dismissed
   for failure to allege sufficient detail about the
   nature of the alleged infringement;
4. Count Seven should be dismissed because Plaintiffs'
   claim of false advertising on Defendants' claim
   that the products are "made in the USA" or "made in
   America" cannot be sustained where the only
   allegation is that the materials used to make
   Defendants' products did not themselves come from
   the USA, but the products themselves were made in
   the USA;
5. Count Eight should be dismissed either for the same
   reasons as Count Seven, or because Plaintiffs lack
   standing to bring a claim under the New Jersey
   Consumer Fraud Act because they are not consumers.

[Docket Item 51-1 at 4-5.]

Plaintiffs then filed a Memorandum in Opposition to

Defendants' Motion to Dismiss Plaintiffs' SAC. [Docket Item 52.]

The arguments raised in Plaintiffs' memorandum are largely

identical to those in the previous memorandum [Docket Item 15]

submitted in opposition to Defendants' previous motion to

dismiss. A small, but notable, addition to the current

memorandum is Plaintiffs' assertion that Defendants' contention

---

[5] To the extent that this claim is pressed, the Court finds this
argument unpersuasive in light of Plaintiffs' addition of Klein
as a Plaintiff and denies the Motion to Dismiss as to these
grounds.

that Plaintiffs do not have a claim under N.J.S.A. § 56-8-19 is moot. [Docket Item 52 at 23.]

Plaintiff also argues that "Defendants are now attempting to object to claims identical to those which it has already answered. [Docket Item 16.] Accordingly, such objections should be considered waived." [Docket Item 52 at 7.] The Court disagrees. While a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be filed before an Answer, the defense that a complaint fails to state a claim upon which relief may be granted is not waived by the filing of an Answer. See Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."). While Defendants' Second Motion is styled a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the standard for such a motion is identical to the standard for considering a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which the Federal Rules explicitly contemplate the filing of, even after a defendant has filed an answer, in order to pursue the defense that the complaint fails to state a claim upon which relief may be granted. See also Commentary to Rule 12, Fed. R. Civ. P. ("A Rule 12(b)(6) motion is a pre-answer motion; by definition, once the defendant answers, it is no longer possible to file a pre-answer motion.

Nonetheless, lawyers often file 'Rule 12(b)(6)' motions after answering. When this occurs, the sensible path for the court to take is to treat the motion as having been made under Rule 12(c).")(citing, inter alia, Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991)). Since there is no practical difference between the standards under Rule 12(b)(6) and Rule 12(c), the Court will address the motion as briefed under Rule 12(b)(6), addressing the Second Amended Complaint.

Accordingly, the Court will proceed to consider the merits of the arguments of the parties.

### III. Standard of Review

When considering a motion to dismiss a complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555).

For Rule 12(b)(6) motions for copyright infringement
claims, such a claim will not be dismissed where a plaintiff
adequately states a claim of "ownership of a valid copyright;
and . . . unauthorized copying." <u>Levey v. Brownstone Inv. Group,
LLC</u>, No. 11-395(ES), 2013 WL 3285057 at *6 (D.N.J. June 26,
2013), <u>aff'd</u>, 590 F. App'x 132 (3d Cir. 2014).

## IV. Discussion

### A. Breach of Contract

Defendants seek dismissal of Count 2 (Failure to Cease
Use/Sale of Licensed Products upon termination of Agreement)
under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon
which relief can be granted. Defendants argue that because the
license terminated on January 1, 2017, any actions taken after
that date are not in violation of the contract. They submit that
this is so on the theory that, if there is no contract, there
can be no violation of the contract. Defendants have widely
missed the mark.

Count 2 is not premised upon a "normal" contractual
violation, but rather a violation of the scope of an exclusive
license. "[I]n an exclusive license, the copyright holder
permits the licensee to use the protected material for a
specific use and further promises that the same permission will
not be given to others. The licensee violates the copyright by

exceeding the scope of this license." Morgan v. Hawthorne Homes, Inc., No. 04-cv-1809, 2009 U.S. Dist. LEXIS 31456, 2009 WL 1010476, at *12 (W.D. Pa. Apr. 14, 2009)(quoting Effects Assoc., Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir.1990)). Here, the license terminated on January 1, 2017. Therefore, any use of the copyrighted materials after January 1, 2017 would be sufficient to state a claim for violation of the scope of the license, and therefore for a violation of Plaintiffs' copyrights.  As previously stated, Plaintiffs allege that the "contract" is the license. Neither party has denied their assent to the License Agreement.

Having established that Plaintiffs plausibly plead that the scope of the license was violated, Defendants' motion for dismissal of Count 2 must be denied.

### B. First Sale Doctrine

Defendants assert that Counts 4 through 6 (copyright infringement) should be dismissed pursuant to the first sale doctrine. [Docket Item 13 at 10.] The first sale doctrine, codified at 17 U.S.C. § 109(a), prevents the copyright owner from controlling future transfers of a particular copy of a copyrighted work after he has transferred its "material ownership" to another. Columbia Pictures v. Aveco, Inc., 800 F.2d 59, 63-64 (3d Cir. 1986)(citing Columbia Pictures Indus. v. Redd Horne, 749 F.2d 154, 159 (3d Cir. 1984)). "Once the

copyright owner places the copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." Quality King Distribs. v. L'anza Research Int'l, 523 U.S. 135, 152 (1998).

However, Defendants' argument is once again misplaced because this was not a sale or disposal of a copy. Again, Plaintiffs allege that Plaintiffs and Defendants entered into a licensing agreement. The licensor "can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license." See MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc., 952 F.2d 769, 779 (3d Cir. 1991); Carlin v. Bezos, 649 F. App'x 181 (3d Cir. 2016); Grant Heilman Photography, Inc. v. John Wiley & Sons, Inc., 864 F. Supp. 2d 316, 325 (E.D.Pa. 2012)("When a licensee exceeds the scope of a license granted by the copyright holder, the licensee is liable for infringement."). Here, Defendants' alleged use of the Licensed Products after January 1, 2017, is sufficient to state a claim that Defendants exceeded the scope of the license.

In Video Pipeline, Inc. v. Buena Vista Home Enter., Inc., 192 F. Supp. 2d 321 (D.N.J. 2002), the defendant argued that its actions of creating its own clip previews from those provided by the plaintiff and subsequently allowing customers of its retailer clients to view them online was protected by the first sale doctrine. Id. at 332. The court found the argument to

16

be misplaced because the defendant "[was] not a retailer who has
lawfully purchased copies of the plaintiffs' product and
therefore entitled to the protection afforded by the first sale
doctrine." Id.  The court found that the defendant "provide[d]
no support for the argument that one in a license agreement is
entitled to the protection of the first sale doctrine defense
that may be afforded to the other party." Id. at 333. The same
conclusion applies here. Defendants have misconstrued a license
for the legal sale that would be necessary for invocation of the
first sale doctrine.

Plaintiffs defeat Defendants' argument based on the first
sale doctrine by pleading they did not sell any of the
copyrighted work to Defendants. The Second Amended Complaint
does not contain any indication that such a sale took place;
indeed, the allegation that Plaintiffs and Defendants entered
into a Licensing Agreement suggests that there was no sale,
which would be necessary for invocation of the first sale
doctrine. In any case, it is not apparent from the SAC that the
first sale doctrine affords the protection to Defendants that
they claim it does. The motion to dismiss as to Counts 4 through
6 shall, therefore, be denied.

**C. Copyright Infringement: Sufficiency of Factual Pleadings**

Defendants also seek dismissal for Counts 4 through 6 on
alternative grounds by asserting that Plaintiffs have not

17

provided adequate information about Plaintiffs' copyright
applications in order to survive a Rule 12(b)(6) motion.
Defendants rely on Bradshaw v. American Institute for History
Educ., No. 12-1367, 2013 U.S. Dist. LEXIS 34566, at *10 (D.N.J.
Mar. 13, 2013), citing Gee v. CBS, Inc., 471 F. Supp. 600
(E.D.Pa. 1979), in their assertion that Plaintiffs did not
provide sufficient information about the copyright
registrations, what the materials looked like, or that the act
of the defendant gave rise to their claims, and the time period
the acts allegedly occurred within, sufficient to withstand a
12(b)(6) motion.

Gee established a relatively high standard for successfully
pleading a claim of copyright infringement in requiring a
statement of "which specific original work is the subject of the
copyright claim, that plaintiff owns the copyright, that the
work in question has been registered in compliance with the
statute and by what acts and during what time defendant has
infringed the copyright." Gee, 471 F. Supp. at 643. "Plaintiffs
must also allege that each work is suitably registered, provide
registration numbers." Id. at 644.

However, the Third Circuit no longer applies the Gee
standard for adequately pleading a claim of copyright
infringement, after its underpinnings have been substantially
weakened.

Illustratively, in *Richard Feiner & Company, Inc. v. Larry Harmon Pictures Corp.*, 38 F. Supp. 2d 276 (S.D.N.Y. 1999) the court stated that the defendant, "relie[d] on *Gee* for the proposition that the complaint must be dismissed for failure to attach the copyright certificates or to provide the registration numbers. However, *Gee* relies heavily on a section from *Moore's Federal Practice, Second Edition*, that has been deleted in the more recent edition." 38 F. Supp.2d at 280. The Court notes the weakened persuasive power of *Gee* and turns, then, to recent guidance from the Third Circuit about pleading standards for copyright claims.

The Third Circuit opinion affirming *Levey v. Brownstone Inv. Group, LLC*, 590 F. App'x 132 (3d Cir. 2014), applied a "broader" standard to copyright claims, stating all a plaintiff must establish is "ownership of a valid copyright; and . . . unauthorized copying." *Id.* at 135. *See also Kennedy v. Creditgo, LLC*, No. 15-1790 (JBS-KMW), 2015 U.S. Dist. LEXIS 161461, at *4 (D.N.J. Dec. 2, 2015)(To state a copyright claim, plaintiff must allege "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.")(quoting *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). In *Kennedy*, the plaintiff's copyright registration number was found to be sufficient for the purpose of showing ownership of a valid copyright. *Id.* at 4.

19

Similarly, Plaintiffs have provided a valid copyright registration number for the subject works (VA 2-049-471); for that reason, the Court finds that Plaintiffs have adequately alleged the elements of a copyright claim and denies Defendants' Motion to Dismiss on those grounds.

### D. Vicarious and Contributory Liability for Individual Defendants

Count 6 concerns vicarious and contributory liability in the context of copyright infringement. Defendants argue that Plaintiffs will have to pierce the corporate veil of the LLC in order to make Defendants Godwin and Bernstein vicariously and contributorily liable. Veil piercing occurs when a court "impose[s] liability on an individual or entity normally subject to the limited liability protections of the corporate form." The Mall at IV Group Props., LLC v. Roberts, No. 02-4692, 2005 U.S. Dist. LEXIS 31860, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005). In order for a court to pierce the corporate veil under New Jersey law, "a plaintiff must show that: (1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law." Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171 (3d Cir. 2002)(citing Craig v. Lake Asbestos of Quebec,

Ltd., 843 F.2d 145, 149 (3d Cir. 1988)); see also Holzli v.

Deluca Enterprises, No. 11-6148, 2012 U.S. Dist. LEXIS 38880,

2012 WL 983693, at 2 (D.N.J. Mar. 21, 2012). Furthermore, "[a]n

individual may be liable for corporate obligations if he was

using the corporation as his alter ego and abusing the corporate

form in order to advance his personal interests." Sean Wood, LLC

v. Hegarty Grp., Inc., 422 N.J. Super. 500, 518 (N.J. App. Div.

2011)(emphasis added).

     The factors necessary for piercing the veil, generally, in

the context of the abuse of the corporate structure are not

alleged in the SAC. However, contributory and vicarious

liability is treated differently in the context of copyright

infringement. As this Court has previously stated:

> An individual may be personally liable for vicarious
> infringement if that person "has the right and ability
> to supervise the infringing activity and also has a
> direct financial interest in such activities."
> Gershwin Publishing Corp. v. Columbia Artists
> Management, Inc., 443 F.2d 1159, 1162 (2d Cir. 1971).
> Also, an individual who might otherwise be protected
> by the corporate veil may be liable for contributory
> infringement if, with knowledge of the infringement,
> he "induces, causes or materially contributes to the
> infringing conduct of another." Id. at
> 1162. See Columbia Pictures Industries, Inc. v. Aveco,
> Inc., 800 F.2d 59, 64 (3d Cir. 1986)(corporate
> officers who provide the site and facilities for known
> infringing activity and ignored repeated requests to
> cease and desist infringing activities held liable for
> contributory liability).

Arista Records, Inc. v. Flea World, Inc., No. 03-2670 (JBS),

2004 U.S. Dist. LEXIS 29591, at *24-25 (D.N.J. July 12, 2004).

Plaintiffs submit that they have adequately alleged that Godwin and Bernstein are appropriate parties to be held liable for vicarious infringement in their personal capacities because they allege that Godwin and Bernstein "had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." [Docket Item 45 at 15]. The Court finds this pleads a plausible basis for vicarious liability of Godwin and Bernstein for infringing conduct at this early stage of the case.

Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259 (9th Cir. 1996) and UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993 (E.D. Ca. 2004), were cases brought against the corporate and individual operators of swap meets and flea markets who rented space at their markets to vendors selling counterfeit and pirated recordings. Both the Fonovisa and Sinnott courts determined that the operators of the market could be held liable on both of these claims because they controlled the premises, had knowledge of the infringing conduct, obtained direct financial benefit from the infringement and materially contributed to the infringing activities by providing space, utilities, parking, advertising, plumbing and customers. Fonovisa, 76 F.3d at 263-64; Sinnott, 300 F. Supp. 2d at 997-1002. See Arista Records, Inc., 2004 U.S. Dist. LEXIS 29591, at *28.

Similarly, in this case, Plaintiffs allege that the Individual Defendants controlled the premises and the sewing factory in which the allegedly infringing materials were produced. Plaintiffs have also alleged that Defendants' sales figures are evidence that the Individual Defendants derived financial benefit from the infringement. Plaintiffs also argue that the Individual Defendants had knowledge of the infringement by virtue of the cease-and-desist letters sent to them by Plaintiff.

The Court agrees that Plaintiffs have adequately stated a claim for vicarious liability for copyright infringement. Similarly to Fonovisa and Sinnot, where the defendants were held liable because they controlled the premises, had knowledge of the infringing conduct, obtained direct financial benefit from the infringement and materially contributed to the infringing activities; here, Plaintiffs assert that Defendants "knowingly induced, participated in, aided and abetted and profited from the illegal reproduction and/or subsequent sales of the Infringing Kentucky Design and the Infringing Licensed Products," and that Defendants "had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." [Docket Item 45 at 15.] The court finds that this adequately states a claim for the Individual Defendants' liability, and will deny Defendants'

motion to dismiss the claims against the Individual Defendants in their personal capacities.

### E. Lanham Act

#### 1. Failure to State a Claim

Defendants also seek dismissal of Count Seven (False Advertising) under the Lanham Act for failure to state a claim upon which relief can be granted. Section 43(a) of the Lanham Act governs claims of unfair competition, and permits a civil action against:

> [a]ny person ... [who] uses ... any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... misrepresents the nature, characteristics, qualities, or geographic origin of ... [the] goods, services, or commercial activities...

Smart Vent, Inc. v. Crawl Space Door Sys., Civil Action No. 13-5691 (JBS/KMW), 2017 U.S. Dist. LEXIS 180799, at *5 (D.N.J. Oct. 31, 2017)(quoting 15 U.S.C. § 1125(a)(1)(B)). In other words, Section 43(a) provides "broad protection against various forms of unfair competition and false advertising," by specifically prohibiting false or misleading factual statements concerning commercial products. Presley's Estate v. Russen, 513 F. Supp. 1339, 1376 (D.N.J. 1981)(citations omitted). A claim of false or misleading representations, in turn, requires a showing:

> a. that the defendant made a false or misleading statement concerning its product;

       b. that the statement caused actual deception or at
       least created a tendency to deceive a substantial
       portion of the intended audience;
       c. that the deception likely influenced purchasing
       decisions by consumers;
       d. that the advertised goods traveled in interstate
       commerce; and
       e. that the statement created a likelihood of injury
       to the plaintiff in terms of declining sales, loss of
       good will, etc.

Smart Vent, Inc., 2017 U.S. Dist. LEXIS 180799,at *5 (quoting

Warner-Lambert Co. v. Breathasure, Inc., 204 F.3d 87, 91-92 (3d

Cir. 2000)).

    Defendants' allegedly-infringing materials are labeled as

"Made in USA." Plaintiffs do not allege that the Licensed

Products are not made in the USA; Plaintiffs allege that

Defendants' US-based materials supplier receives its products

from a foreign country. Plaintiffs' email exchange with

Defendants' materials supplier revealed that the suppliers "do

not have any canvas fabrics that are Made in the USA." [Docket

Item 40-6 at 12]. Therefore, Plaintiffs assert in the SAC's

Lanham Act claim that Defendants' products must be made either

in whole or in part of imported materials.

    Under 16 C.F.R. § 303.33, "[e]ach textile fiber product

made in the United States, either in whole or in part of

imported materials, shall contain a label disclosing these

facts." "Made in the USA" is a label reserved for products that

are "completely made in the United States of materials that were

made in the United States." Id. The statute further provides: "A
textile fiber product made in the United States in whole or in
part of imported materials shall contain a label disclosing
these acts; for example: 'Made in USA of imported fabric.'" Id.
Given this statutory framework, Plaintiffs may allege a claim of
false advertising where the labels on the Licensed Products do
not adequately disclose the fact that the fabric is imported.
Having adequately pled that Defendants' products were made in
part of imported materials, Plaintiffs successfully state a
claim that Defendants' use of the Made in the USA label was a
false and misleading statement.

Defendants also claim that Count Seven fails because it
alleges "a mere speculation that 'consumer will discover that
the products were made in China or other international
territories,' and that harm may result in that speculative
eventuality." [Docket Item 13-1 (referencing previous Count 8)
at 14]. However, the Third Circuit has held that "[i]f a
plaintiff proves that the challenged commercial claims are
'literally false,'[6] a court may grant relief without considering

---

[6] A "literally false" message may be either explicit or "conveyed
by necessary implication when, considering the advertisement in
its entirety, the audience would recognize the claim as readily
as if it had been explicitly stated." Clorox Co. v. Proctor &
Gamble Commercial Co., 228 F.3d 24, 35 (1st Cir. 2000).

whether the buying public was actually misled." Novartis

Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.

Co., 290 F.3d 578, 586 (3d Cir. 2002). Here, in consideration of

the allegation of Defendants' violation of 16 C.F.R. § 303.33,

Plaintiffs state a claim that Defendants' use of the Made in the

USA label was literally false. Therefore, the Court does not

need to consider whether Plaintiffs adequately assert that

consumers were actually misled. Id. See also Deston Therapeutics

LLC v. Trigen Labs., Inc., 723 F. Supp. 2d 665, 674 (D. Del.

2010)(in denying defendant's motion to dismiss, court did not

consider whether the buying public was actually misled when the

misleading statements were literally false).

For the above reasons, dismissal of Count Seven is not

appropriate, and Defendants' Motion to Dismiss as to this count

shall be denied.

### 2. Summary Judgment

Alternatively, in connection to Count 7, Defendants seek

conversion into a Fed. R. Civ. Pro. 56 summary judgment

procedure.  However, a conversion to summary judgment under Rule

56 is not appropriate or necessary at this stage of litigation.

> The Court, "[i]n determining whether a claim should be
> dismissed under Rule 12(b)(6), looks only to the facts
> alleged in the complaint and its attachments without
> reference to other parts of the record." Jordan v.
> Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261
> (3d Cir. 1994). If the Court considers evidence
> outside of the pleadings, it may convert the motion to

dismiss into a motion under Rule 56(c), Fed. R. Civ.
P. <u>Butterbaugh v. Chertoff</u>, 479 F. Supp. 2d 485, 490
(W.D. Pa. 2007) (citing <u>In re Rockefeller Ctr. Props.
Sec. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999)).

<u>Green v. Potter</u>, 687 F. Supp. 2d 502, 517 (D.N.J. 2009)

Defendants refer to Plaintiffs' claims concerning
Defendants' U.S.-based supplier as matters outside the pleadings
in consideration of arguing for Rule 56 conversion. In the
Second Amended Complaint, however, Plaintiff explicitly pleads
that the materials used were not made in the USA, in support of
its claim of false advertising related to Defendants' Made in
America designation. [Docket Item 45 at 8.] These matters, to
the extent they ever were, are no longer outside the pleadings.
Moreover, the Court may rely on documents explicitly referenced
and incorporated into the complaint in assessing a motion to
dismiss without converting the motion into one brought under
Rule 56. Finally, the Court has already found that Plaintiffs
adequately state a claim for false advertising; summary judgment
consideration is not warranted at this time.

**F. New Jersey Consumer Fraud Act**

Finally, Defendants seek dismissal of Count 8 of the Second
Amended Complaint, the violation of the New Jersey Consumer
Fraud Act ("CFA"), N.J.S.A. § 56:8-2. Defendants assert that
Plaintiffs lack standing because neither Plaintiff is a consumer
under the CFA. [Docket Item 51-1 at 15.]

The CFA provides the right to initiate a private cause of action to "any person who suffers any ascertainable loss of moneys . . . as a result" of a violation of the CFA. N.J.S.A. § 56:8-19. The Act provides that "[a] corporation may qualify as a person under the NJCFA when it finds itself in a consumer oriented situation." Trans USA Prods. v. Howard Berger Co., No. 07-5924, 2008 U.S. Dist. LEXIS 61069, at 18 (D.N.J. Aug. 4, 2008).

Defendant argues that Klein and Fish Kiss are not consumers. In City Check Cashing, Inc. v. Nat'l State Bank, 244 N.J. Super. 304 (Super. Ct. App. Div. 1990), a "consumer" was defined as "one who uses economic goods, and so diminishes or destroys their utilities." Id. at 309. In Arc Networks, Inc. v. Gold Phone Card Co., Inc., 333 N.J. Super. 587, 591-92 (Law Div. 2000), the plaintiff was a phone company that contracted to provide bulk telephone services to the defendant, a prepaid phone card provider. The plaintiff filed suit for the balance after the parties engaged in a dispute concerning plaintiff's inability to handle the volume of calls. The defendant filed a counterclaim alleging plaintiff's violation of the CFA. The court found that the defendant lacked standing as a consumer on its CFA claim, because "its business purpose for purchasing the plaintiff's services was to make them available to users of its

29

phone cards. In so doing, it did not diminish, destroy or consume Arc's services." Id. at 592 (emphasis added).

Here, the Court agrees that the complaint does not adequately allege that Plaintiffs have standing as consumers. Plaintiffs licensed their designs to Defendants. As in Arc Networks, the transaction's business purpose was for Defendants to sell products bearing Plaintiffs' designs, with Plaintiffs' ultimate goal being to collect royalty payments. There was no purchase of goods for Plaintiff to use or consume. As such, Count 8 of Plaintiff's complaint shall be dismissed for lack of standing.

In their Response, Plaintiffs claim that Defendants' argument for dismissal of their CFA claim is moot, because Defendants seek dismissal of Plaintiffs' claim under § 56:8-19 as opposed to § 56:8-2 as pleaded in the SAC. [Docket Item 52 at 23.] First, Defendants do not seek dismissal of "Plaintiffs' claim under § 56:8-19", but rather dismissal of Plaintiffs' claim under the New Jersey Consumer Fraud Act. [Docket Item 51-1 at 11.]

Second, and confusingly, Plaintiffs state:

Defendants assert that Plaintiffs do not have standing to sue under the New Jersey Consumer Fraud Act, and further that Plaintiffs do not satisfy the elements required under that Act. Plaintiffs agree, and that is why Plaintiffs have not brought a claim under § 56-8-19, but rather have brought a claim under N.J.S.A. § 56-8-2, the New Jersey Unfair Trade Practices Act.

> While Plaintiffs have brought this error to Defense
> counsel's attention, Defendants have chosen not to
> correct the deficiency in its Motion. Accordingly,
> because Plaintiffs have no brought a claim under the
> New Jersey Consumer Fraud Act, Defendants' argument is
> moot.

[Docket Item 52 at 23.]

This Court is of the opinion--to the extent that it can be said to be a matter of opinion--that N.J.S.A. § 56:8-19 and N.J.S.A. § 56:8-2 are both provisions of the New Jersey Consumer Fraud Act. See, e.g., Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 521 (2010)("The Consumer Fraud Act (CFA or the Act), N.J.S.A. 56:8-1 to -181, provides relief to consumers from 'fraudulent practices in the market place.'")(citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11 (2004)); Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 512 (Sup. Ct. App. Div. 1996)(defendant found "liable under the Consumer Fraud Act, N.J.S.A. 56:8-2"). This Court is not aware of a separate, applicable, statute entitled the New Jersey Unfair Trade Practices Act, and certainly not one that appears at N.J.S.A. § 56:8-2.[7] Cf. N.J.S.A. 17:29B-3 ("Unfair methods of competition

---

[7] The Court notes a very few cases, e.g., Cinalli v. Kane, 191 F. Supp. 2d 601, 608 (E.D.Pa. 2002), wherein the court refers to the provisions of N.J.S.A. Sec 56:8-1 et seq. as the "New Jersey Unfair Trade Practices Act"; however, the cases to which that opinion, for example, cites, all refer to those provisions (including N.J.S.A. 56:8-2) as provisions of the New Jersey Consumer Fraud Act. Cinalli, 191 F. Supp. 2d at 608 (citing, inter alia, Gennari, 288 N.J. Super. at 533). See also Oster v. Angel's Const. Swimming Pool Renovation, LLC, No. 11-6740, 2012

or unfair acts or practices prohibited: No person shall engage in this State in any trade practice which is defined in this act as or determined pursuant to this act to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance")(emphasis added). Subsection 56:8-2 is a provision of the New Jersey CFA.

Plaintiffs seem to mischaracterize the nature of the CFA subsections as separate statutes. However, as is the case with most statutes, the sections work in conjunction with each other. Specifically, N.J.S.A. § 56:8-2 declares certain acts ("act, use or employment by any person of any unconscionable commercial practice, deception,") as unlawful or unfair. Id. N.J.S.A. § 56:8-19 serves the purpose of giving the rest of the statute force by establishing who may bring a claim, what the pleading requirements are, and identifying potential damages.

The case law related to the CFA clearly establishes that the "consumer standing" requirement applies to all sections of

---

WL 3060931, at *1-2 (D.N.J. July 26, 2012)(describing N.J.S.A. Sec 56:8-19 as "New Jersey's Unfair Trade Practices Act" and citing Lee, 203 N.J. at 521). The Court also notes the language of Stewart Title Guar. Co. v. Greenlands Realty, L.L.C., 58 F. Supp. 2d 370, 390 (D.N.J. 1999), which describes "The New Jersey Unfair Trade Practices Act ('NJUTPA'), N.J. Stat. Ann. Sec 56:8-2, also known as the Consumer Fraud Act[.]" None of these references alter the Court's conclusion that a claim purportedly pled under Sec 56:8-2 (rather than Sec 56:8-19) is a claim under the CFA and as such is subject to the general requirement that a plaintiff pleading such a claim must be a "consumer." See infra.

the CFA, not just § 56:8-19. In <u>Daaleman v. Elizabethtown Gas</u>

<u>Co.</u>, 77 N.J. 267 (1978), the court dismissed a CFA claim because

the defendant was not engaged in selling or advertising within

the meaning of the CFA. The court helpfully illustrated the

structure and workings of the CFA as follows:

> The act provides for injunctive relief against
> unlawful practices, N.J.S.A. 56:8-8, monetary
> penalties for violation of the act, N.J.S.A. 56:8-13,
> and also permits a person, who suffers a loss due to a
> method, act or practice declared unlawful under the
> act, to sue and recover threefold the damages
> sustained, together with reasonable attorney's fees
> and costs of suit, N.J.S.A. 56:8-19.

<u>Id.</u> at 271. As discussed above, a plaintiff must be a consumer

(or a commercial competitor) to have standing to bring a claim

under New Jersey's CFA. <u>See</u> <u>800-JR Cigar, Inc. v. GoTo.com,</u>

<u>Inc.</u>, 437 F. Supp. 2d 273, 295-96 (D.N.J. 2006)(granting summary

judgment on claim under CFA where plaintiff was not consumer or

commercial competitor of defendant).

Another decision in this District also dismissed a CFA

claim due to the plaintiff's lack of standing as a consumer. <u>See</u>

<u>Trans USA</u>, 2008 U.S. Dist. LEXIS 61069, at *18. As in <u>Daaleman</u>,

courts apply the various sections of the CFA in conjunction with

one another.

Regardless of any purported error by Defendants as to the

precise subsection of Plaintiffs' claim that Plaintiffs argue

render this putative basis for dismissal "moot," dismissal of

Plaintiffs' CFA claim could be granted sua sponte.

> When . . . it becomes apparent that a plaintiff's
> complaint fails to state a claim, a district court may
> dismiss the claim sua sponte, if service has been made
> upon the defendants and the plaintiff has had an
> opportunity to address the deficiency. Oatess v.
> Sobolevitch, 914 F.2d 428, 430, 430 n.5 (3d Cir.
> 1990); see also Dougherty v. Harper's Magazine Co.,
> 537 F.2d 758, 761 (3d Cir. 1976)(noting authority
> for sua sponte dismissal for failure to state a
> claim), citing 5 [now 5B] Wright & Miller, Federal
> Practice and Procedure: Civil § 1357; cf. Couden v.
> Duffy, 446 F.3d 483 (3d Cir. 2006) (upholding a sua
> sponte grant of summary judgment in favor of a non-
> moving defendant where the grounds for dismissal were
> identical to those for the moving defendants).

Brown v. Aponte, No. 06-2096, 2006 U.S. Dist. LEXIS 72684, at

*8-9 (E.D. Pa. Oct. 3, 2006)

Having established that (1) the "consumer standing"

requirement of the CFA is commonly read to apply to the statute

as a whole and (2) Plaintiffs are not consumers (or commercial

competitors) as defined by the statute and the supporting case

law, it has become apparent that Plaintiffs lack standing to

maintain a CFA claim. The factors for dismissing a claim sua

sponte require that service has been made upon the defendants

and the plaintiff has had an opportunity to address the

deficiency. Id. Here, there is no dispute that the defendants

have been properly served, and Plaintiffs' Memorandum in

Opposition to Defendants' Motion to Dismiss Plaintiffs' Second

Amended Complaint [Docket Item 52 at 23] explicitly addresses

this argument. Moreover, Plaintiffs have had several opportunities to amend, clarify and explain this purported claim and have not satisfactorily done so. Accordingly, the Court will dismiss Plaintiffs' claim under the CFA, N.J.S.A. § 56:8-2, because Plaintiffs do not have standing as consumers or commercial competitors to maintain such a claim.[8]

## V.    Conclusion

Defendants ask this Court to dismiss several of Plaintiff's claims. In addition and/or in the alternative, Defendants request that the Court issue an order requiring plaintiff to submit a more definite statement pursuant to Fed. R. Civ. P 12(e). Because the Complaint at which the First Motion to Dismiss was directed has now been supplanted by two subsequent Amended Complaints, the Court will deny the First Motion to Dismiss as moot.

For the reasons explained above, Defendants' motion to dismiss the Second Amended Complaint shall be granted in part as

---

[8] Defendants move to dismiss, in the alternative, on the same grounds as they moved to dismiss the false advertising claim under the Lanham Act: "To the extent Count Eight is not a claim under the NJCFA, but is the state law equivalent of Count Seven (false advertising), Count Eight should be dismissed and/or dismissed on summary judgment, for the same reasons stated in section IV.C. above in connection with Count Seven[.]" [Docket Item 51-1 at 15.] The Court expresses no opinion as to whether there is a different state law claim that Plaintiffs may pursue in lieu of their CFA claim. It suffices, for the purposes of the instant Motions, to hold that the SAC does not state such a claim.

to Plaintiffs' claim under the New Jersey CFA (Count 8) and shall be denied in all other respects. Considering that Plaintiffs submitted two amended complaints; that discovery has yet to be concluded; and that Plaintiffs' FAC and now SAC address most (if not all) of Defendants' allegations that they did not know which copyrighted materials were infringed, by virtue of the additions to the Complaint and the attached exhibits listing the specific designs that were infringed and how they were infringed, Defendants' request for a more definite statement will also be denied. An accompanying Order will be entered dismissing Count 8 and permitting the case to proceed on Counts 1-7 of the Second Amended Complaint.


**August 13, 2018**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              U.S. District Judge